HENRY H. APLIN, AUDITOR GENERAL, v. THE BOARD
OF SUPERVISORS OF MIDLAND COUNTY.

*Taxes—Accounting between State and county—Estoppel—Mandamus.*

1. Where an application for *mandamus* is heard upon petition and answer, the facts stated in the answer must be taken as true.
2. Losses arising from the sale of the "five-year list" of State tax lands, so called, under the tax law of 1869, are improper charges against the counties, and their collection cannot be enforced. *Auditor General v. Ottawa Co.*, 76 Mich. 295.
3. In this case it is held that the claimed settlements of the State with the county do not show such an accounting as should estop the county from asking that charges for losses arising from the sale of the "five-year list" of State tax lands, so called, under the tax law of 1869, should be stricken from the account as stated by the State and sought to be enforced by *mandamus.*

*Mandamus.* Submitted November 12, 1890. Denied December 24, 1890.

Relator applied for *mandamus* to compel respondent to apportion among the townships of the county the amount of an indebtedness claimed to be due the State from the county. The facts are stated in the opinion.

*B. W. Huston,* Attorney General *(Moses Taggart,* of counsel), for relator.

*M. H. Stanford* and *William D. Gordon,* for respondent.

LONG, J. This is a petition for *mandamus* to compel the board of supervisors of Midland county to apportion among the several townships of that county an amount

of indebtedness claimed to be due the State from the county.

The controversy arises over the amount found by the Auditor General to be due the State from the county on October 1, 1888. In the statement of account forwarded by the Auditor General to the clerk of the board of supervisors of that county, it appears that the total State tax to be apportioned for that year, under the various acts of the Legislature, was $3,856.54. In addition to this, the Auditor General notified the county clerk that there was also to be levied, as a portion of the county taxes as required by section 22, Act No. 153, Laws of 1885 (3 How. Stat. § 1169$n$1), the indebtedness of the county to the State, amounting on July 1, 1888, to the sum of $18,799.95. The controversy here grows out of this old account. This notice was laid before the board of supervisors at their October session of 1888, and a committee of three was appointed by them to investigate the account, it being claimed by the board that the old account was much less than stated by the Auditor General.

The petition for the writ of *mandamus* sets out that annual settlements were had between the State and county for several years, up to and including the year 1883, and that the Auditor General, in making up the amount of this old indebtedness, took the settlement made in 1883 as a basis of the account. Taking that as a basis, the Auditor General makes the account as above stated. The Auditor General claims that he is justified in taking this as a basis, as in all the years prior thereto there had been annual settlements, and that the county is estopped by such settlements from opening up the old account, and asking an adjustment of such prior accounts.

The contention of the respondent is that no such annual settlements were made; that the county treasurers

of that county had no power to bind the county in making settlements with the Auditor General; and that, if the account is properly recast, the amount due the State from the county would be less by several thousand dollars than claimed by the Auditor General. The respondent takes as a basis for the accounting the state of the account between the county and State on October 1, 1868.

The petition states that there was a balance due from the State to the county of Midland, on October 1, 1883, of $10,880.18, and, on November 19, 1883, this amount was paid over, and the receipt of the treasurer taken therefor, and that the payment of this amount adjusted all there was due the county at that date, and that due notice was given to the county clerk to be laid before the board of supervisors of such statement; that, in each year since that date, the Auditor General has rendered a correct statement of the account with that county, and transmitted the same to the clerk of that county. It is also alleged that every dollar sought to be enforced against the county in this proceeding arose from taxes legally apportioned to Midland county by the State since the year 1883, and items charged up under the law since that time. The Auditor General also sets out in his petition what he terms the state of the account from year to year since 1875, for the purpose, as it is claimed, of showing that settlements were had from year to year during that time. It is also alleged in the petition that the form of account kept with Midland county, the charges made, and settlements had from year to year were of the same class and character as with all other counties in the State.

The answer denies that any settlement was had between the county and State in 1883, and alleges that, when said sum of $10,880.18 was paid to the county treasurer, he

was informed that it was paid on account of the delinquent tax of 1881, and the treasurer understood he was receipting for such delinquent tax and nothing else. It is denied that said sum represented the true amount due from the State to the county at that time. It is claimed that, at the time those moneys were paid over to the county in 1883, the sum of $16,880.25, principal and interest, arising under section 124 of Act No. 169, Laws of 1869, was wrongfully used by the Auditor General to swell the debit side of the account in favor of the State, and that no settlement has been had between the county and State since the year 1868. The answer also denies that the claim presented by the State arises from taxes apportioned to the county since the year 1883, but avers that a large part of said indebtedness arises from taxes apportioned to the county prior to the alleged settlement of that year. It is denied by the answer that the county treasurer had power to bind the county on any of such alleged settlements, and alleged that the board of supervisors have never regarded such settlements as final and conclusive against the county. The answer and the exhibits attached set out therein what is claimed to be the true state of the account as it should appear from year to year, from 1868 to 1888. It is also alleged in the answer that the Auditor General has charged the county with the amount for which lands were bid off to the State at the October sales in each year, and charged interest thereon to the county; that, one year from the time such bids were so charged, they were credited back to the county without interest being added, thus charging the county interest for one year on such bids; that redemptions were made during the year, and no credit given for the interest on such redemptions. These are the only items specifically set out in the answer that have arisen since 1883, and enter into the amount sought to be

enforced, unless the amount claimed includes the deficiencies arising under the five-year list. It is alleged by the answer that this amount now claimed by the State does include such charges,—that is, that the account has been so kept by the Auditor General that these charges have been carried in the account from year to year, when they are now sought to be collected from the county.

"That the Auditor General charged to said county, under said section 124, in the year 1870, for principal and interest, the sum of $1,374.89, and in the year 1871 the sum of $917.07, for principal and interest, and in the year 1872 the sum of $1,346.75, for principal and interest, and in the year 1873 the sum of $742.06, for principal and interest, and in the year 1874 the sum of $1,420.01, for principal and interest, and in the year 1875 the sum of $2,516.83, for principal and interest, for losses on lands sold under said section, which said lands had been bid in by the State prior to the year 1869, and that said sum, with the interest thereon to July 1, 1875, amounts to $9,666.39; that no sum whatever was credited to Midland county under said section 124; that these charges are still in said account, and have been illegally used to swell the account against the county, and that on the 1st day of October, 1883, said amounts, with the interest thereon, were the sum of $16,880.25, and that on that day the State owed the county said sum of $16,-880.25, in addition to the other sums due said county from the State, and that on July 1, 1888, said illegal charges with interest thereon amount to the sum of $23,-294.22, which should be credited back to said county in the said account of which it is a part; that respondent always supposed that the indebtedness claimed arose from the said illegal charges."

The facts stated in the answer must be taken as true. *Hosier v. Board,* 45 Mich. 340; *Pack v. Presque Isle Co.,* 36 Id. 380. Taking the answer as true, it appears that there entered into this account, in the year 1883, the sum of over $16,000, made up of charges arising under section 124 of Act No. 169, Laws of 1869, which were losses sustained by the State upon sales of tax lands held

by the State for five years. It has been decided many times by this Court that these were improper charges against the counties, and the collection could not be enforced. *Auditor General v. Monroe Co.*, 36 Mich. 76; *Auditor General v. Saginaw Co.*, 62 Id. 579; *Auditor General v. Ottawa Co.*, 76 Id. 295; *Auditor General v. Shiawassee Co.*, 74 Id. 536.

To avoid this claim, however, it is insisted by counsel for the Auditor General that settlements have been had from year to year, for many years, up to and including the year 1883, by which the county is now estopped from setting up the claim that these illegal items enter into the account. Claim is also made by counsel in their brief that these items are no part of the account presented, but that respondent seeks to set them up by way of set-off or counter-claim. The answer negatives this position. The only question for consideration then presented is the validity of these claimed settlements, or whether the county is estopped by the dealings had between it and the State from making claim that these items enter into the account. It has been held in the cases above cited that this is an amount which the State had no right to charge up to the county. The account has been carried along by the State for years, with these items included in it. No question has been raised, until this proceeding was commenced, but that the account was properly made up, and of legal items. It does now for the first time appear just what the account is made up from, and, when the board of supervisors ascertained that it included these losses on the five-year list, they refused to apportion or assess the taxes for those amounts, and we think very properly. The figures taken from the books of the Auditor General's office and from the county treasurer's office are presented in this record, running through a period of nearly 20 years. We do

not feel called upon to go over them in detail or to state them here. The claimed settlement does not show such an accounting, in our view of the case, as should estop the county from asking that illegal items should be stricken from the account.

With the losses charged to the county arising from the sale of the five-year list of lands stricken from the account, and the county given credit, if it has not been given it, for interest on redemptions made at the Auditor General's office where the county has been charged interest on such taxes for the year, the balance of the account should be recognized by the county of Midland, and apportioned as provided by the act of 1885.

The writ of *mandamus* must be denied.

CHAMPLIN, C. J., MORSE and GRANT, JJ., concurred with LONG, J.

CAHILL, J., (*dissenting*). The pressure of business, incident to my retirement from this Court, has made it impossible for me to investigate this case as fully as I would like, but, from the examination I have made, I cannot concur in the result reached by my brethren. It seems to me that the conclusion reached allows the respondent to set off its claim, arising under the invalid law of 1869, against the valid claim of the State. This we held could not be done in *Auditor General v. Grand Traverse Co.,* 73 Mich. 182. See, also, *Ambler v. Auditor General,* 38 Id. 736. It appears clear to me that the unsettled matters of account were settled in 1883, and the claim of the State in this proceeding is for State taxes apportioned to the county since that time. To allow the county to defend against this claim by asserting a counter-claim growing out of the other matter is, it seems to me, the same in effect as to allow a suit to be brought against the State for such counter-claim.