REBECCA L. CRITTENDEN AND EDWARD G. CRITTENDEN,
BY CHARLES D. CRITTENDEN, THEIR NEXT
FRIEND, V. ARTHUR L. CANFIELD
AND FRANK H. CANFIELD.

*Mortgage—Deed absolute in form—Equitable title—Surrender of
claim by parol—Gift—Principal and agent—Infants
—Action by next friend—Costs.*

1. One having a personal interest in the result of a suit which he
   institutes in the name of infant complainants, who are also
   interested, he acting as their next friend, will be charged with
   the costs in case the bill is dismissed.

2. The rule is well settled that a right resting in parol may be
   surrendered or extinguished by parol.

   So *held,* where a husband, who was equitably entitled to a
   reconveyance of 20 acres of land which he had conveyed to
   his brother by a deed absolute in form, but intended as a
   mortgage, in anticipation of approaching death directed that
   the land be reconveyed to his wife, which was done; which
   deed is held to have vested the title to the land in the wife as
   effectually as if taken in the name of the husband, and he had
   deeded directly to the wife, in consideration of love and affec-
   tion, and in anticipation of approaching death.

3. A debtor, in anticipation of approaching death, sent an agent
   to adjust the claim of his creditor, to whom he had conveyed
   20 acres of land many years before, and after the debt was
   incurred, by a deed absolute on its face, of which fact the
   creditor (a brother of the grantor) was first advised on receiv-
   ing the deed by mail after it had been recorded, there being
   no agreement or understanding between them as to its execu-
   tion. The agent, who was also directed to secure a reconvey-
   ance of the land, adjusted the claim, and took a quitclaim
   deed of the land in the name of the debtor's wife, and on his
   return made his report and exhibited the deed to his principal,
   who expressed himself as satisfied, and thereupon executed a
   deed to his only child, a daughter, of other land owned by
   him. And it is held that in the absence of any showing that
   the agent disobeyed his instructions, or of collusion with the
   wife, he will be presumed to have acted in good faith, and in

accordance with his instructions, and the principal will not be presumed to have been ignorant of the action of his agent.

Appeal from Oakland. (Moore, J.) Argued June 3, 1891. Decided July 28, 1891.

Bill to declare a deed to have been given as security, and for other relief. Complainants appeal. Decree dismissing bill affirmed. The facts are stated in the opinion.

*Baldwin, Draper & Jacokes* (*A. E. Chadwick* and *B. R. Erskine,* of counsel), for complainants.

*Moore & Canfield,* for defendant Frank H. Canfield.

*Eldredge & Spier,* for defendant Arthur L. Canfield.

McGRATH, J. Complainants are the minor children of Martha W. and Frank E. Crittenden. Martha W. Crittenden was the daughter of Edward C. and Elizabeth K. Gallup. Elizabeth K. Gallup was the daughter of Christian Clemens. Edward C. Gallup died August 28, 1877, leaving Elizabeth K. Gallup, his wife, and Martha W. Gallup, an only child, then 26 years of age. Martha married in 1880, and died in 1887, leaving surviving her complainants and Thomas C. Crittenden. Thomas died in October, 1887. Elizabeth K. Gallup died testate, April 5, 1889. By her will, executed June 18, 1887, Arthur L. Canfield was made executor, and the property in question was devised to defendants in trust for complainants and said Thomas C. Crittenden. The will provided that the homestead should be conveyed to Rebecca L. Crittenden when she should become of age, and that, when the youngest survivor of her grandchildren should arrive at the age of 21, all of said property then remaining, after deducting the homestead, should be divided between said grandchildren, or the survivors of them; that, in case said Rebecca L. should die before arriving at the

age of 21 years, the homestead should be divided between the survivors; that, in case all of said grandchildren should die without issue before the distribution provided for, the estate then remaining should be distributed between the heirs at law of the testatrix, as though she had died without issue.

Christian Clemens died in 1844, leaving, as his sole heirs at law, four daughters,—Harriet, wife of George Lee; Ann, wife of William Canfield; Elizabeth· K., wife of Edward C. Gallup; and Louisa M. Clemens. In 1841, Christian Clemens, intending thereby to make an *ante mortem* disposition of his property for the benefit of his daughters, conveyed by deed to his sons-in-law and Louisa M. Clemens, as tenants in common, certain real estate, including the land in question, which contained 20 acres, which is now a part of the city of Mt. Clemens. After the death of Clemens, the said grantees partitioned the property so conveyed, and this 20 acres was assigned to Edward C. Gallup, who with his wife and family occupied it from 1844 until his death. In 1856, Edward C. Gallup and wife gave to his brother, James Gallup, a deed of this 20 acres, and on August 24, 1877, James conveyed the same to Elizabeth K.

The bill claims that the deed to James was a mortgage to secure the payment of an indebtedness due James; that this indebtedness was adjusted four days before the death of Edward C. Gallup; that the deed from James to Elizabeth was not .delivered until after the death of Edward, and that Elizabeth, through Arthur L. Canfield, one of the defendants, fraudulently procured the deed to herself, instead of to Edward; that Martha W. was the only heir of Edward C.; that complainants are the legal heirs of Martha W.,—and asks that the conveyance from Edward to James be decreed to be a mortgage; that the same be declared to be fully paid by Edward; that the

deed to Elizabeth be declared to be in fraud of complainants' rights; and that the title to the residue of the 20 acres may be decreed to be vested in complainants.

The answer sets up that, at the time of the conveyance by Edward to James, Edward was financially embarrassed, and that the object of the conveyance was to protect the property from Edward's creditors. It admits the indebtedness to James, but insists that the indebtedness arose some years before the deed of conveyance; that the deed from James to Elizabeth was procured at the instance and express direction of Edward C., and without fraud, and that the same was procured and delivered to Elizabeth before the death of Edward, and that such delivery was made in the presence of, and with full knowledge and by the direction of, Edward, and that at the time of the procurement of said deed the indebtedness to James was adjusted by the payment to him of the sum of $850 out of moneys furnished by Elizabeth.

It must be conceded that, in 1853, Edward became indebted to James in the sum of $2,500; that prior to the 24th day of August, 1877, Edward had paid upon this indebtedness over $2,000; that, in the spring of 1856, Edward embarked in a mercantile enterprise at Milwaukee, and, anticipating possible failure, executed in April, 1856, the deed to James; that said deed was not recorded until September 29, 1856; that said James had no knowledge of the execution or recording of said deed until the same was sent by mail to him at New York, nor was there any understanding between James and Edward as to the execution of said deed; that, on the same day upon which said deed to James was recorded, another deed of other property from Edward to another brother was also recorded, and about a year afterwards the other property was reconveyed to Edward, but the deed reconveying was not recorded until January 22, 1858, on which

day another deed running from Edward and wife of the same property to one French was also recorded; that Edward C. Gallup died August 28, 1877; that, four or five days before his death, Arthur L. Canfield, one of the defendants, was employed by Edward C. Gallup to go to Grand Rapids, where James Gallup then resided, adjust the matter of the indebtedness of Edward to James, and procure a deed of the 20 acres from him; that said Canfield did go to Grand Rapids, did adjust the indebtedness, and on the 24th day of August, 1877, procured a deed from James Gallup to Elizabeth K. Gallup, and, returning to Mt. Clemens, reported to Edward and exhibited to him the deed; that the indebtedness from Edward to James was settled by the payment of $850, the balance of which was sent to James after the death of Edward, as appeared from the following receipt signed by James, and sent to Arthur L. Canfield:

"OFFICE OF JAMES GALLUP,
"GRAND RAPIDS, MICH., Sept. 6, 1877.

"Received of Mrs. Elizabeth K. Gallup, of Mt. Clemens, a draft on New York for three hundred and fifty dollars, it being the balance of eight hundred and fifty dollars for a quitclaim deed to her, bearing date August 24, 1877.

"JAMES GALLUP."

That after the return of Arthur L. Canfield from Grand Rapids, and before the death of Edward C. Gallup, the said Canfield, at Edward's suggestion, prepared, and the said Edward C. and Elizabeth K. Gallup executed and delivered to Martha W. Gallup, a deed of other property in the township of Lenox, then owned by the said Edward C., and consisting of about 50 acres of land; that, after the death of Edward, Elizabeth K. continued to reside upon said property until the time of her death, and Martha W., the daughter, resided with her continuously till some time in 1882, and was with

her more or less afterwards, until the time of the death of Martha W.; that Elizabeth K. Gallup in her life-time platted said property into lots, and sold and conveyed away several of said lots, and gave away others; that Martha W. was fully cognizant of the platting of said property, and of the sales and conveyances and gifts made by her mother, and during her life-time said Martha W. fully recognized her mother's ownership in said property, and did not claim to own or to have any interest in said property; that, at the time Edward C. sent said Canfield to Grand Rapids, he, the said Edward C., was fully conscious of approaching death, and his mind continued to be clear up to the very last day of his life; that in conversation with one Van Eps, who was an intimate friend, the said Edward C. talked with said Van Eps about his approaching death, told him about the situation of his property, and the transaction between himself and James; whereupon Van Eps suggested the making of a will, but said Edward C. told Van Eps that Canfield had gone or was going to Grand Rapids to arrange the matter with James, and that he (Edward C.) had made arrangements for the distribution of his property, and that a will would not be necessary.

Arthur L. Canfield was sworn for defendants, and complainants contend that, he being a nephew of Elizabeth K., his testimony was inadmissible under the statute. We have deemed it unnecessary to consider the testimony of Arthur L. Canfield, and it is therefore unnecessary to determine the question as to its admissibility. There is no testimony tending to show fraud on the part of Arthur L. Canfield, and none tending to show collusion between said Canfield and Elizabeth K. Gallup. Canfield was sent to Grand Rapids by Edward C. Gallup to adjust the account with James, and to procure a deed of this property from James. He did adjust the matter, and he pro-

cured the deed in question, and, independently of the
testimony of said Canfield, it is shown that he returned
to Mt. Clemens, made a report, and exhibited to Edward
C. Gallup the deed to Elizabeth, and, in the absence of
any showing that he disobeyed instructions, or of collu-
sion with Elizabeth, it must be presumed that he acted in
good faith, and in accordance with his instructions.  The
witness Van Eps testified that he was present at the
interview between Edward and Canfield, upon the latter's
return from Grand Rapids; that he heard Canfield say
that he had procured the papers he went for; that he had
the papers there; that Gallup saw them, expressed him-
self as satisfied, and seemed to be greatly relieved, because
he was afraid he was going to die before Canfield's
return; that he seemed very anxious for him, and called
for him almost every hour. Under these circumstances, it
will not be presumed, either that Edward C. Gallup was
ignorant of what had been done by his agent, or that his
agent acted fraudulently, or in collusion with Elizabeth
K. Gallup.  In the light of this very deed, and the con-
veyance to his daughter, it is very clear what Gallup
referred to when he told Van Eps that it was unneces-
sary for him to make a will.

The contention of complainants is that the interest of
James in said property was a mortgage interest;  that
Elizabeth took no greater estate than that held by James;
that the debt has been paid by the estate of Edward,
and Martha's heirs are entitled to take.  Whatever inter-
est James had at the time of the conveyance to Eliza-
beth, the legal title was in him.  By the conveyance to
Elizabeth, the legal title was vested in her.  Conceding
that the deed to James was intended as security for a
debt, whatever interest Edward C. had rested in parol.
The property had come from his wife's father.  He had
always recognized her equitable interest therein.  Being

about to die, he was anxious, and manifested a desire, to make a distribution of this and other property, and, by his express direction, this property was conveyed by James to Elizabeth, and the property in Lenox was by himself and wife conveyed to Martha.

The rule is well settled that a right resting in parol may be surrendered or extinguished by parol. In *First Nat'l Bank v. McAllister,* 46. Mich. 397, the husband had taken a deed of certain lands from one Bourn in 1872, and before recording it, at the request of his wife, he surrendered or destroyed this deed, and had Bourn execute another to his wife to secure her for advances which she had made exceeding in amount the purchase price. A few months afterwards the wife made arrangements to purchase the land absolutely, at an advance of $500, and she surrendered to the husband evidences of debt to the full amount. In 1879 a levy was made upon the property, to satisfy a debt of the husband, and a bill was filed against the wife in aid of execution. The Court upheld the title of the wife, and say:

"The canceling of the debt was a complete payment of consideration, and no further ceremony was needed to make the contract a completely executed one, if she already held the title. * * * As between the parties, it is, we think, settled law that one who has deliberately, and without any fraud or deceit practiced on him, but, on the contrary, with the intent for good reasons to have the legal title placed in some one else, obtained a transfer which has all the apparent qualities of such a title, cannot assail it by parol evidence, and show the existence of a former deed to himself, which he has suppressed without recording for the very purpose of having the land reconveyed by his own grantor. The case comes within the rule laid down in *Gugins v. Van Gorder,* 10 Mich. 523. * * * In this case it is complainants, and not defendants, that rely on parol evidence to show a title. Mrs. McAllister holds the legal title of record. The presumptions in her favor cannot be destroyed without proof of an earlier right which is based on superior

equities, because the first deed recorded is presumptively the best. There would be no equity whatever in allowing a party who has been the procuring agent in giving her this legal priority to destroy it in his own favor, by showing by parol evidence that he once had an unrecorded deed from the same grantor. Complainants show no equity whatever, and are bound by the estoppel against McAllister."

Edward C. Gallup having an equitable right to a reconveyance from James, had an undoubted right to relinquish such equitable interest, and bestow it by way of gift upon Elizabeth; and when the title was conveyed to her at his request, it became a gift as valid as if he had taken a reconveyance from James, and conveyed direct to her, in consideration of love and affection, and in anticipation of approaching death.

This proceeding was instituted by Charles D. Crittenden as next friend of the infant complainants. It appears that, some time prior to the commencement of this suit, the said Charles D. Crittenden procured from Frank E. Crittenden, the father of Thomas C. Crittenden, deceased, a quitclaim deed of any interest which the said Frank E. might have in the property in controversy as heir of Thomas C. Crittenden, deceased. Charles D. has therefore a personal interest in the result which he sought to bring about. He cannot be allowed to litigate his interests at the expense of these minors.

The decree below is affirmed, the bill dismissed, with costs of both courts to defendants, and against Charles D. Crittenden, the next friend.

The other Justices concurred.