## CITY OF HANNIBAL v. CAMPBELL.

(Circuit Court of Appeals, Eighth Circuit.    March 21, 1898.)

No. 988.

1. MUNICIPAL CORPORATIONS—STREETS—MAINTENANCE—NEGLIGENCE.
    Although a city may lay off a street 80 feet in width, it is not required to improve and maintain it for travel throughout its entire width, but it has performed its duty to the public by improving and maintaining such portion thereof as is sufficient for the reasonable accommodation of the public.

2. SAME.

Where the city had surveyed a street 80 feet in width, but graded and graveled only 30 feet thereof, which was adequate to the public use, an injury to a traveler occasioned by his driving off the usually traveled portion, and falling over the bank of a creek 30 feet from the graveled road, creates no liability on the part of the city, although the point of the accident may have touched the outer boundary of the surveyed highway.

3. SAME.

Unless the dangerous precipice or pitfall, which occasions the injury to the traveler, be so near to the usually traveled highway as to endanger his safety while traveling on the used highway, no liability to the city arises. If he departs from the used part of the highway, and the injury results to him while attempting to regain the highway, by reason of his horse balking and backing into a ditch or falling over a bank, no recovery can be had against the city.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

This was an action at law by George Campbell against the city of Hannibal, Mo., to recover damages for personal injuries received by falling over a bank near the edge of a highway. In the circuit court verdict and judgment were given for plaintiff, and the defendant has sued out this writ of error.

George A. Mahan, for plaintiff in error.

D. H. Eby and C. A. Babcock, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge. The plaintiff in error is a municipal corporation organized under a special act of the legislature of the state of Missouri. Through one of its suburbs it opened a street known as "Grand Avenue." The street, as surveyed, was 80 feet in width, but only about 30 feet, lying principally west of the center, was graveled and used for public accommodation. The graveled portion was in good condition, and, as the locality through which it ran was sparsely settled, this portion of the street was amply sufficient for the public use. There was a small creek running, in its general course, parallel with the avenue. At a point perhaps a hundred yards south of the point where the accident in question happened, the avenue crossed this creek. From there, running north on the east side of the avenue, it zigzagged until opposite the house of one Bailey, which stood on the west side of the street. There was a considerable bend in the creek, which, thence returning to a point a little to the north, touched the outer east line of the surveyed avenue. On the occasion in question the plaintiff, a young man residing in Quincy, Ill., across the river from the city of Hannibal, in company with his father, went in a buggy along this avenue from the south, to attend a funeral at the house of said Bailey. Arriving at a point opposite this house, they turned out of the traveled gravel road into the bend of the creek, where they left the horse and buggy in the keeping of a boy while they entered the house to attend the funeral. Returning to the buggy, they got in, the father driving, and started in a northwestern course, with the view of re-entering the traveled road to take position in the funeral procession,

headed to the south. From the avenue to the bed of the creek there was an old wagon-road path, where wagons had gone down the creek bank for the purpose of hauling sand. It had not been used for a year or more, and was overgrown with grass. The buggy was driven up this blind path towards the avenue until (according to the version given by the plaintiff and his father) the horse's head or forepart reached the graveled road, when the driver's attention was called to the approach of a coal wagon coming from the south. Instead of attempting to pass on in front of the wagon, he pulled the horse back, and the horse continued to so back until some one cried out a warning of danger, whereat the driver struck the horse with the lines, but instead of going forward the horse continued to back, turning its head around towards the south, locking the buggy on that side, when the buggy and horse went over the bank, about eight feet high, into the bed of the creek, whereby the plaintiff received the injury for which he sued. The right of recovery is based upon the allegation that the city was negligent in not erecting and maintaining along said creek a railing, guard, or other barrier to protect persons, teams, and vehicles from falling into this creek. Other important features of the evidence will sufficiently appear in the progress of this discussion.

At the conclusion of the evidence on behalf of the plaintiff below, the defendant below asked for a peremptory instruction to the effect that the plaintiff could not recover. This request was renewed at the conclusion of all the evidence, and was refused by the court.

Among other instructions afterwards asked by defendant was the following:

"The court declares the law in this case that the defendant is not required to place guards or railings at a dangerous place located thirty or more feet from the traveled or used portion of Grand avenue; and although the jury may find from the evidence that there was a dangerous place at or near the eastern side of Grand avenue which was not protected by guards, and at which place plaintiff was injured, yet, if the jury further find that such dangerous place was more than thirty feet from the traveled part of Grand avenue, they will return a verdict for the defendant."

This instruction was refused. The jury returned a verdict for the plaintiff below in the sum of $300, and the city brings the case here on writ of error.

It is the settled law of the state of Missouri that a municipality, like the city of Hannibal, has complete jurisdiction and control over its streets, and this control carries with it the corresponding obligation on the part of the city, after it has opened a street to public travel, to keep and maintain it in a reasonably safe condition for such use. Blake v. City of St. Louis, 40 Mo. 569; Bowie v. Kansas City, 51 Mo. 454; Smith v. City of St. Joseph, 45 Mo. 449. A neglect of this duty renders the city liable to damages for injuries received by persons traveling on the highway, exercising reasonable care, when unduly exposed to accidents by reason of pitfalls or precipices and the like, left unguarded near to the highway.

It is equally the well-settled law of Missouri that, notwithstanding a city may lay out one of its streets 80 feet wide, it is not required, especially in outlying districts like the one in question, to improve the street throughout its surveyed width. It is only required to improve

and maintain so much thereof as is reasonably suitable and necessary for the public travel.    As said by the court in the case supra:

"There are streets or parts of streets in many cities which are not absolutely necessary for the convenience of the public, which will be brought into use by the growth of the city, or there may be streets that have more width than is necessary for the present use or requirements of travel.    All that is required in such case is that the city see that as the streets are required for use they shall be placed in a reasonably safe condition for the convenience of travel."

This rule, as exemplified by Judge Cooley, is predicated of the established doctrine that the matter of improving and maintaining given parts of a surveyed street for public use pertains to the discretion of the legislative department of the municipal government, and as such is not reviewable by the courts.    Detroit v. Beckman, 34 Mich. 125; Lansing v. Toolan, 37 Mich. 152.

Without reasonable ground for difference, the evidence being that the city at the point in question improved this avenue for the width of 30 feet by grading and graveling it so as to render it commodious and safe for all necessary public use, the question to be decided is, was the city guilty of culpable negligence in failing to erect and maintain a railing or other guard along the bank of said creek to protect travelers from passing over this embankment, who saw fit, for their own convenience, to voluntarily pass outside of the traveled portion of the highway, and was the accident that befell the plaintiff attributable to the failure to so barricade the creek?

It logically results from the proposition that in maintaining 30 feet of the street suitable for public convenience the city had in that respect discharged its obligation to the public, the case under consideration is to be treated as if the street had been surveyed and established originally only 30 feet wide.    It is true that the plaintiff's testimony was to the effect that his horse, at the time he began the backward movement, had reached the graveled part of the road, and that he thought he did not back more than 10 or 15 feet before they went over the embankment; but the fact remains established by such a weight of evidence as to admit of no two opinions among honest men that the graveled part of the road opposite where the accident occurred lay principally on the west side of the avenue from the creek. The plaintiff put upon the witness stand the city engineer, who made, in the presence of several witnesses and confirmed by them, an actual measurement of the ground.    By the map made by him, the creek, a few feet from where the buggy went over the bank, only touched the eastern line of the 80-foot surveyed avenue, and that from the center of the street to this point it was by actual measurement 40 feet. Even had the traveled portion of the road been in the center of the avenue, it would have been 25 feet to the outer line of the 80-foot survey.    The evidence further showed that where the buggy went over the bank was 8 or 9 feet southeast of the point where the stake was placed by the engineer at the outer line of the survey.

The instruction requested by the plaintiff in error and refused by the court predicated the distance between the east line of the traveled road and the point of accident at 30 feet.    Therefore the court refused to advise the jury that if the alleged dangerous precipice was 30 feet

from the street, which the city suitably maintained for the public travel, it was not under obligation to maintain a railing or other protection along the bank of the creek to prevent such an accident as befell the plaintiff below. The recognized authorities are agreed that no negligence is imputable to the defendant city for such failure.

In Brown v. Mayor, etc., 57 Mo. 156, the plaintiff sought to recover from defendant city because of an injury resulting to his team, which ran into a hole in that portion of the street outside of the traveled portion of the street. The portion of the street there maintained for public use was 30 feet in width, and the court held that it was error not to charge the jury that if the street was safe and in good order, of a sufficient width to have been safely traveled with ordinary care and prudence, no damage occasioned by plaintiff's team getting from under his control and running away outside of the usually traveled portion of the street, to the spot where the accident took place, could be recovered against the defendant.

In Puffer v. Orange, 122 Mass. 389, it was held that a town is not bound to erect barriers to prevent travelers from straying from the highway, although there is a dangerous place near the highway which they may reach by so straying. So in Murphy v. Gloucester, 105 Mass. 470, it was held that a town is not liable for failure to erect barriers of any kind to prevent or warn travelers from straying off the highway and falling into a dock 25 feet distant therefrom, although the land, as in the case at bar, between the highway and the dock, was on a level therewith and open. In short, it will be found, on an examination of the authorities, that unless the dangerous precipice or pitfall is so near to the usually traveled highway as to expose the traveler while traveling thereon to an unexpected accident, as at a sharp turn in the road, or so near to the traveled path that the stumbling of a footman or veering of a horse might carry the person or vehicle over the embankment or into the pitfall, no negligence is imputable to the city for failure to place a railing or guard at such place. Sparhawk v. Salem, 1 Allen, 30; Alger v. Lowell, 3 Allen, 402; Adams v. Natick, 13 Allen, 429; Daily v. Worcester, 131 Mass. 454.

No liability to damages arises against the city by reason of the failure to erect barricades to protect a party who voluntarily passes outside of the known traveled way, or who receives an injury outside of the traveled path while attempting to come upon the highway by reason of a fall from an embankment lying outside of the improved and traveled street. City of Monmouth v. Sullivan, 8 Ill. App. 50; Goodin v. City of Des Moines, 55 Iowa, 57, 7 N. W. 411.

The case of Barnes v. Chicopee, 138 Mass. 67, in its essential facts and principles, is quite germane to the case at bar. Where the injury occurred the highway was 50 feet wide, of common earth, and, as in this case, was without sidewalks. The traveled part of the road was clearly marked, with a well-trodden footpath on the southerly line of the highway. On the south side of the highway as located in its entire width, and $9\frac{1}{2}$ feet therefrom, was the top of the bank of the Chicopee river, on a level with the road. There was no rail or guard upon the bank. From the worn track of the used part of the road to

the edge of the bank the distance was 34 feet. The accident occurred in the evening after dark. The plaintiff was traveling in a one-horse wagon, accompanied by a man and two small children. The hat of one of the children blew off, and the horse was stopped while one of the party went to recover the hat, when the horse began to back, and despite the efforts of the men went down the bank with plaintiff and the children, killing the horse and breaking the carriage. In that case, just as here, when the horse began to back the carriage was not in the traveled road, but was upon the edge thereof, 9½ feet from the bank, and was in the path made by foot-passengers. There, as in this case, the driver did not know that the vehicle was near the bank until the horse began to back. The liability of the defendant town was predicated of negligence in not maintaining a railing or guard at said bank. It was held that the defendant town was not liable. The court said that "the test is whether there is such a risk of a traveler, using ordinary care, in passing along the street, being thrown or falling into the dangerous place, that a railing is requisite to make the way itself safe and convenient. But it is not bound to do so to prevent travelers from straying from the highway, although there is a dangerous place, at some distance from the highway, which they may reach by straying." And, further, that, in the determination of the question as to whether the defect is in such close proximity as to make traveling on the highway unsafe, "that proximity must be considered with reference to the highway as traveled and used for public travel, rather than as located"; citing several cases sustaining the nonliability of the town where the dangerous place was from 20 to 30 feet from the highway.

If the plaintiff's testimony were to be accepted as absolutely true, how is it possible under the law to render the defendant city answerable for his injuries? No accident befell him while traveling upon the known and sufficient public highway. For their own convenience, he and his father knowingly departed from the traveled road into the bend of the creek, and even then, but for the backward movement of the horse, in which from perversity or mismanagement the horse persisted until it passed outside of the surveyed limit of 80 feet, the misfortune would not have come to the plaintiff. Waiving any question as to the accountability of plaintiff for either the perversity of the horse or the mismanagement of the father in driving, the point where the horse and buggy went over the embankment was, as matter of law, where the defendant city was not required to erect and maintain a barrier to prevent an accident in no way connected with its establishment and maintenance of a public traveled highway at least 30 feet therefrom. It is only in cases where, by reason of the proximity to the traveled highway of some such precipice or dangerous pitfall, that a person while traveling on the improved and used portion of the road is exposed to accident, that it becomes a question of fact for the determination of a jury as to whether the traveled highway ran so near to such point of danger as to leave it in doubt among reasonable men whether it would have been prudent and careful for the city to have erected some suitable protection to travelers.

In any aspect of the case, admissible under this evidence, the court

should have given the instruction set out in the foregoing part of this opinion, to the effect that, if the point where the accident occurred was 30 feet from the traveled, graveled portion of the highway, the jury should return a verdict for the defendant. The judgment of the circuit court is therefore reversed, and the cause remanded for further proceedings in conformity with this opinion.