## BRYANT *versus* INHABITANTS OF BIDDEFORD.

Whether alleged obstructions or defects in a highway render it unsafe, although not in the traveled part of it, is for the consideration of the jury.

And in determining its safety, the *width* of the way, is, under some circum-stances, an essential element.

Whether in some particular localities the highway should not be made *safe and convenient* for its *entire width*, is a question for the jury to determine.

The Sabbath, as established by statute, commences at midnight preceding, and ends at sunset on the Lord's day.

Traveling *after* sunset on that day is not illegal.

Nor is it any defence in an action for damages against a town, for injuries to plaintiff's horse by a defect in one of their highways, received *after* sunset on the Sabbath day, that the plaintiff let his horse on *Sunday*, and at the time of the injury the horse was being used under such contract.

ON EXCEPTIONS from *Nisi Prius*, SHEPLEY, C. J., presiding.

CASE, to recover damages to plaintiff's horse and chaise, by reason of a defect in a road or way in the town of Biddeford.

The general issue was pleaded.

The defence was that the place of the accident was not that part of the highway the town were bound to keep in repair; nor were the town liable in any event, the plaintiff having let his horse and chaise on Sunday, and the injury being suffered during the letting under that contract.

It appeared that the plaintiff, on Sunday, Oct. 3, 1852, let his horse and chaise to one Wakefield, to go from Kennebunk to Saco, and back that night, without specifying the hour he should return; and that on the same evening, between six and seven o'clock, in going from the Biddeford house out into Main street, in the direction of the depot, the horse fell into a hole in a culvert, and broke his back and injured the chaise.

The street from the Biddeford house to Main street, was called Chesnut street, and was built by the Saco Water Power Company, six or seven years previously. The place of the accident was in the culvert where it intersected with Main street, and was made by the Saco Water Power Co.

The evidence tended to show that the traveled part of Main street at that place was forty one feet wide, and the defect was fifteen feet from the nearest part of it, but was about thirteen feet within the exterior line of Main street.

The instructions to the jury were, *that* there did not appear to be any testimony to prove that Chesnut street had been legally laid out as a town way, or as a highway, and if the town had not expended any money upon it, it would be under no legal obligation to keep it in repair; *that*, if

satisfied the Saco Water Power Company had laid out and dedicated it to the public use, the town would not thereby become liable to repair it, unless it had in some way accepted or adopted it as a way; *that* the burdens of the town and its liabilities could not be increased or varied by the acts of the Saco Water Power Co. without its consent; *that* they would consider whether the culvert was within the limits of Main street, and whether if within its limits the street was made sufficiently wide and smooth to be safe and convenient for travel, being regarded as unaffected by the opening of Chesnut street; *that* there might be places in our towns and villages, where it might be the duty of towns to make a street or road safe and convenient for travel over the whole width as laid out, as where one or more streets cross each other, or in public places; whether the one now under consideration was such a place, they would judge:—*that*, if satisfied the injury was occasioned on Sunday, after sunset, the fact that the plaintiff had let the horse and chaise, and it had been used during an earlier part of that day, would not prevent a recovery if otherwise entitled.

The jury returned a verdict for plaintiff.

The defendants excepted, and also filed a motion to set aside the verdict as against the evidence.

*Luques*, in support of the motion, cited *Smith* v. *Inhabitants of Wendell*, 7 Cush. 498; *Shephardson* v. *Colerain*, 13 Met. 55, and contended that the last clause of the instructions was erroneous. R. S., c. 160, § 26.

The letting the horse was a matter of business, and traveling upon Sunday by Wakefield was unlawful, unless from "necessity or charity," which plaintiff has failed to show. *Bosworth* v. *Inhab'ts of Swansey*, 10 Met. 363.

The plaintiff must be free of all negligence or fault to maintain this action. *Smith* v. *Smith*, 2 Pick. 621; *Howard* v. *North Bridgewater*, 16 Pick. 189. The act of plaintiff, in doing which the accident occurred, was unlawful, and no person can seek assistance of the law who founds his claim upon a contravention of the law. *Pattee* v. *Greeley*, 13 Met. 284; *Gregg* v. *Wyman & al.*, 4 Cush. 322.

*Bourne, contra,* cited *Baldwin* v. *City of Bangor,* 36 Maine, 518; *Church* v. *Cherryfield,* 33 Maine, 460; *Cassedy* v. *Stockbridge,* 21 Verm. 391; *Snow* v. *Adams,* 1 Cush. 443; *Cobb* v. *Standish,* 14 Maine, 198; *Cogswell* v. *Lexington,* 4 Cush. 307. He also contended that the case of *Gregg* v. *Wyman & al.* did not apply to this case.

APPLETON, J. — The instructions "that there did not appear to be any testimony to prove that Chesnut street had been legally laid out as a town or as a highway, and if the town had not expended any money upon it, it would be under no obligation to keep it in repair; that if satisfied the Saco Water Power Company had laid out and dedicated it to the public use, the town would not thereby become liable to repair it, unless it had in some way accepted or adopted it as a way; that the burden of the town and its liabilities could not be varied by the acts of the Water Power Company without its consent;" were in all respects as favorable to the defendants in any aspect of the cause, as they had any right to claim, and therefore furnish no just ground of complaint.

It was held in *Smith* v. *Wendell,* 7 Cush. 498, that towns are not liable for such obstructions on portions of the highway not constituting the traveled path, and not so connected with it that they affect the security or convenience for travel of those using it. It is for the jury to determine whether the alleged obstructions or defects do in fact render the highway unsafe.

The width of the road is a matter especially for the determination of the constituted authorities to whose charge this matter is entrusted. *Baldwin* v. *Bangor,* 36 Maine, 518. Where the existence of a road is proved by its user alone, the width of the road, whether co-extensive only with the actual travel, or extending to the fences on each side, is a matter for the jury. *Lawrence* v. *Mt. Vernon,* 35 Maine, 100. Whatever may be the width of the road, it is for the jury to determine whether at a given time and place

it is safe and convenient. The town is liable for injuries occasioned by obstructions in a highway, though not on the traveled path, whether placed there by the owner of the soil or by others. *Snow* v. *Adams,* 1 Cush. 442; *Coggswell* v. *Lexington,* 4 Cush. 308; *Cobb* v. *Standish,* 14 Maine, 198. So the width of the part prepared for travel is a most essential element in determining its safety and convenience. A width, which under some circumstances would meet all the exigencies of the public, might under a change of circumstances be entirely insufficient for that purpose.

The jury were directed to find "whether the culvert was within the limits of Main street and whether, if within its limits, the street was made sufficiently wide and smooth to be safe and convenient for travel, *being regarded as unaffected by the opening of Chesnut street;* that there might be places in our towns and villages, where it might be the duty of towns to make a street or road safe and convenient for travel over the whole width laid out, as where one or more streets cross or in public places; whether the one now under consideration was such a place, they would judge." These instructions are in entire conformity with the law as established in *Smith* v. *Wendell,* 7 Cush. 498, and in *Shepardson* v. *Colerain,* 13 Met. 55, which have been cited in the defence. They are clear and precise and accurately define the legal liabilities of the defendants. If the defendants are held liable, it is because, under such instructions, the jury have found that the road was not "safe and convenient" at the place where the injury of which the plaintiff complains, was occasioned.

It was held in *Bosworth* v. *Swansey,* 10 Met. 363, that a person who travels on the Lord's day, neither from necessity nor charity, could not maintain an action against a town for an injury received by him while so traveling, by reason of a defect in a highway which the town was by law obliged to keep in good repair. By R. S., c. 160, § 28, the Lord's day, so far as relates to the prohibition "to travel or do any work, labor, or business on that day, works

of necessity or charity excepted," includes "the time between the midnight preceding and the sun's setting of the same day." In the case of *Bosworth* v. *Swansey*, the plaintiff was traveling in the forenoon of the Lord's day, in direct and open violation of the laws of the State. In the present case, the bailee of the plaintiff was not traveling on the Lord's day as defined by law, nor was he, at the time when the injury occurred, traveling in contravention of the laws of this State.

The verdict of the jury must be regarded as having established the following facts: that the plaintiff's horse was injured while passing over a road which the defendants were bound to keep in repair, in consequence of its defective and unsafe condition, and without fault or neglect of the person driving; that the horse was driven with ordinary and common care, and that the injury was done at a time when all might lawfully travel over the road in question.

It is immaterial to the defendants whether the horse when injured, was driven by the plaintiff or some one else. It only concerns them that it should be driven by a careful and prudent driver. The time when the injury happened was not on the legal Sabbath, it being no more against the law to travel after the sunset of that day than on any day in the week. The defence is that the plaintiff, having loaned his horse on the Lord's day as established by law, cannot recover for any injury to the same during that bailment, because the contract of bailment, having been made on the Lord's day, was illegal and void. The proposition relied upon, is, that when property is bailed on the Sabbath, the owner cannot claim the protection of the law for any injury it may receive on the following Monday, or any other day during the continuance of the bailment, because the property bailed was originally taken under a contract, which the law declares null. The defendants have by their neglect occasioned a loss to the plaintiff, at a time and under circumstances which would render them liable to respond in damages to any other citizen of the State, who might have

been traveling there at the time. To an injury arising solely from their neglect, they interpose as a bar an antecedent void contract with which they have no connection whatsoever. When the injury happened no law was being violated. Nor is the plaintiff to be placed without the protection of the law because he may at some previous time have made a contract which it refuses to lend its aid in enforcing. If the contract of bailment was void, no rights could be acquired under it. To set it up in defence, is to rely upon it as a valid contract, which the law declares it is not. A void contract is to be so far regarded as subsisting, that its very invalidity is to be made to constitute a valid defence to parties in the wrong. Such a proposition is as devoid of law as it is destitute of logical consistency.

The learned counsel for the defence places great reliance upon the case of *Gregg* v. *Wyman*, 4 Cush. 322, where it was held that if the owner of a horse knowingly lets him on the Lord's day, to be driven to a particular place, but not for purposes of necessity or charity, and the hirer injures the horse by immoderate driving, in consequence of which he afterwards dies, the owner could not maintain an action against the hirer for such injury, though it was occasioned in going to a different place and beyond the limits specified in the contract. The authority of this case has been denied by Mr. Justice PERLEY, in a learned and elaborate opinion in *Woodman* v. *Hubbard*, 5 Foster, 67, where the directly contrary doctrine was held to be law. In the present case however, it does not become necessary, in this judicial conflict of authorities, to determine what, upon the particular point in those cases, may be the law in this State, inasmuch as the principles there decided are not perceived to have any important bearing upon the rights of the parties now before us.

In the case of *Gregg* v. *Wyman*, the suit was between the parties to a contract which the law declared void. Such is not the case here.

It is argued that " the plaintiff's own illegal act forms one

link in his chain of title; that is a defective link, which cannot hold the chain together, and the whole must fail." But the bailment, whether valid or invalid, constitutes no link in the chain of facts upon which his right to recover must depend. His right to recover is in no way connected with the inquiry whether the driver was bailee or not. It equally exists in either event, if the horse was prudently driven and the other facts necessary to establish his cause are satisfactorily proved.

The instruction therefore, that " if satisfied the injury was occasioned on Sunday after sunset, the fact that the plaintiff had let the horse and chaise and it had been used during an earlier part of that day, would not prevent a recovery, if otherwise entitled," was in entire conformity with the law as applicable to the facts of the case.

This cause was submitted to a jury with clear and accurate instructions as to the law. The facts were peculiarly for their consideration. There is nothing indicating intentional misconduct or such gross error on their part as seems imperatively to call for our interference.

*Exceptions and motion overruled.*