### The City of Guthrie v. Cynthia E. Swan.
(Filed July 30, 1897.)

1. STREET CROSSING—*Contributory Negligence—Fact for the Jury.* The question as to whether or not a party is guilty of contributory negligence in passing at night over a street that is being graded, and where there are no barriers or danger signals, and where there is a conflict in the evidence as to the condition of the street, and as to whether it was lighted or not, and where the party injured claims she did not know the condition of the street but supposed it was in a safe condition, is a question of fact for the jury, under the circumstances of the case, and not of law for the court

2. RIGHT OF CITY TO GRADE STREET—*Duty as to Reasonable Care.* While the right of the city to grade or otherwise improve a street is paramount to the right of the public to use the same during the time of making such repairs or doing such grading, if such grading or improvement makes the street dangerous for travel in the night time, it is the duty of the city to place warning signals for passers-by or to place barriers preventing travel during the time of improvement.

3. STREETS—*Amount of the Same to be Kept Safe for Travel.* The question as to whether or not the whole width of a street of a city must be kept in a safe condition for travel, is a question of fact for the jury and not of law for the court to determine.

(Syllabus by the Court.)

Error from the District Court of Logan County; before Frank Dale, District Judge.

*B. T. Hainer*, for plaintiff in error.

*Gardner & Risley*, for defendant in error.

Opinion of the court by

BIERER, J.: The plaintiff below, defendant in error here, recovered a judgment against the city of Guthrie for the sum of $2,250, damages sustained by her on account of the negligence of the city in that it did not keep its streets in a safe condition for travel. There is much dispute in the evidence, but the testimony of the plaintiff tends to show that she was a married woman, 41 years of age; that on the night of the 18th of April, 1892, she had attended church, and on her way home came on Noble avenue, going west to its intersection by First street, extending north and south; that the city of Guthrie was grading First street by an excavation which did not disturb the west side of First street but cut down about three feet on the east side; that as she approached First street on the south sidewalk of Noble avenue, she observed that the sidewalk was torn up for some distance, before she reached First street; that the ground being rough

where the sidewalk had been she left the sidewalk and went into the street, and upon getting closer to First street observed that it had been graded, and she then went farther north to the wagon road, to where the ground had been washed or displaced and where she supposed it was safe to cross. She thought the descent to First street there was about a foot, and in her effort to step down on to First street fell and sprained her ankle, and she thinks the step off.must have been two or three feet. There was no danger signals placed at the street where the excavation was made, but it is shown that there were two electric lights on streets, each one block, or about 300 feet, away from the place of the accident; and the plaintiff does not claim that she was unable to see the condition of the street plainly, excepting the bottom of the ditch into which she stepped, and where she says it was dark in the ditch.

Many of these facts are strenuously opposed on the part of the city, tending to show that the two electric lights made it perfectly light at the place of crossing, and that in the progress of the grading there was an approach made in a part of the street for travel for vehicles, about 35 or 40 feet in width, and that the ground where the sidewalk had been was also cut away and steps made for safe passage for foot passengers. Counsel for plaintiff insists that in that state of the case, plaintiff admitting that she observed the grading recently done and the condition of the street, she is guilty of contributory negligence in attempting to cross the street. That when she attempted to cross in the condition in which she found the street to be, she did so at her own risk, and cites the case of *Wright v. City of St. Cloud*, 55 N. W. 819, as authority.

The law as laid down in the case cited is not applicable to this case. In that case the plaintiff knew fully the condition of the street. It was in broad daylight, and she knew that the street was covered with snow and ice, and she knew its dangerous condition, but only over estimated her ability to cross it in safety. In such a case, of course, she took her own chances. In this case the plaintiff claims that she did not know that the approach to First street was as high as it was; that she supposed it was only about a foot high at the place where she attempted to cross, although she found when she fell on trying to cross, that it was two or three feet high. She says she made an effort to find a safe place to cross the street, and that she came to the place where it appeared that the wagons had been crossing, and there being no danger signals or obstruction to her passing, she made the effort to cross, and in doing so in the dark she got hurt, although she was endeavoring to pass in safety. There is evidence disputing her claim that the crossing was unsafe at that point, or that it was dark there, and also some evidence, consisting of statements made by herself soon after the accident, tending to show that she did not cross where she testified she did. We cannot say, under such circumstances, that she was guilty of contributory negligence, for that was a question of fact for the jury to determine from the conflicting evidence. (*City of Wyandotte v. Gibson*, 25 Kan. 236.)

The city had the right to grade and improve its streets, and this right, during the time of such grading and improvement, was paramount to the right of the public to use the street, but this did not relieve the city from all responsibility in the premises. The city must use reason-

able care to protect the public from injury, and if the grading leaves fatal defects to safe public travel, then the city must close up the street or give warning of the danger. The case of *City of Lincoln v. Calvert*, 58 N. W., 115, is not opposed to this view. In that case the court says:

"But where a city is charged with the care of streets and the duty of improving them, the duty of keeping them in a reasonably safe condition for travel is remitted during the time occupied in making repairs or improvements. (*James v. San Francisco*, 6 Cal. 528; *Williams v. Tripp*, 11 R. I. 447.) In order, however, that the city should be protected from liability upon this ground, it must exercise reasonable care to protect the public from the consequences of the unsafe condition of the street. (*City of Covington v. Bryant*, 7 Bush. 248.) Therefore, an impassable condition of the street requires that the city should erect guards or barricades to keep the public off."

A more serious question in the case is presented by instruction number 7, given by the court to the jury, which instruction is as follows:

"7. You are instructed that any person traveling upon a sidewalk of a city which is in constant use by the public, has a right, when using the same with diligence and care, to presume and to act upon the presumption that it is reasonably safe for 'ordinary travel throughout its entire width and free from all dangerous holes, obstructions and other defects; and if you believe from the evidence that the plaintiff, while traveling along one of the streets of this city, was injured, as alleged in her petition, and that the injury would not have happened if the street had been in reasonably good repair and safe condition, then the defendant is liable for such injury, provided you believe from the evidence that the plaintiff was exercising reasonable care and caution to avoid injury while passing over said walk, and that the defendant did not use reasonable care to keep their streets in a safe condition.' "

This instruction is abstractly correct, but concretely wrong. It states the law correctly as applied to sidewalks, or to the part of the street which is open to and being used for public travel, or to a street where, under the circumstances, all of it, throughout its entire width, should be kept in a safe condition for travel, but it states the law incorrectly in holding, as a matter of law, but not as a matter of fact for the consideration of the jury, that the entire width of all streets must be kept in a safe condition for travel, and that the jury might find negligence to exist on the part of the city from the mere fact of not keeping the entire width of the street in safe condition for travel for foot passengers. This instruction means that when applied to this case. It is true it starts out with a statement of the law with reference to sidewalks, but it then proceeds to tell the jury that if the plaintiff received her injury while traveling with due care "along one of the streets of the city, * * and that the injury would not have happened if the street had been in reasonably good repair and safe condition, then the defendant is liable for such injury," and if they further believed that the plaintiff was using due care "while passing over said walk, and that the defendant did not use reasonable care to keep their streets in a safe condition."

The plaintiff's own evidence showed that she had left the sidewalk at the time she received the injury and had passed on to the street, so that the jury could not have understood this instruction to apply only to sidewalks proper, but that the place where the plaintiff crossed should be treated the same as a sidewalk, and the jury were at liberty then to find negligence on the part of the city if the entire street was not kept in the safe condition

for foot passage that a sidewalk should reasonably be in. The question submitted to the jury involved as much a question of the negligence of the plaintiff as of the defendant's negligence. If the plaintiff was to any extent guilty of carelessness then she could not recover, no matter how careless the city may have been. She claims she took care to examine where she was going. · The city claims she did not, and that if she had exercised reasonable care she would have had no trouble in passing in safety by going over the place cut down for the passage of wagons and vehicles. She claims that there was an abrupt fall in the wagon road where she crossed of considerably more than a foot, as she had supposed it to be. The city claims that the wagon way was cut down with a gradual slant to the bottom of the excavation. There was no contention, however, but that the bank between the wagon way and the sidewalk was from 2 to 3 feet high, and the plaintiff's evidence tended to show that the bank was the same height under the sidewalk and that it likewise had not been cut down. Now, if the plaintiff was clothed with the presumption that all parts of the street were in a safe condition for travel, then it would make little difference whether she received her fall while passing over the wagon road or over the space between the wagon way and the sidewalk; and the jury could entirely avoid the difficulty which existed under the evidence of determining from the testimony whether the wagon road was in a reasonably safe condition for travel or not, for the law, as thus laid down, would give them the right to evade this difficult question and find for the plaintiff if she was using the reasonable care of a traveler while passing along the traveled portion of

the highway. The presumption that the street was reasonably safe for travel at all places simply means that the city was ᵤᵤₐₙd to keep the streets in a safe condition for travel at all places. Under such high rule of responsibility on the part of the city the degree of care on the part of a traveler might be very small, while on the other hand the attempt to pass over a place where the city was not bound to keep the street in a safe condition for travel when the passenger could see the proper place for his passage, might be and probably would be absolute negligence. The plaintiff nowhere contends that she could not see the sidewalk or that she could not see the wagon road, so that it is not a case where the traveler fell unawares over the embankment created by the grade. The erroneous instruction might be immaterial in this case if there was no dispute upon the question as to where the plaintiff crossed the grade. If there was no dispute but what she crossed over at the sidewalk without knowledge of its dangerous condition or over the wagon road, then she was properly clothed with the presumption of their safety until she acquired knowledge to the contrary, but there was a dispute in the evidence on that question. Mrs. Swan testified that she went down where the wagons had gone down, and she thinks it must have been two feet and a half or perhaps three feet of a fall. She afterwards testified that she crossed "near the wagon road."

In support of her testimony she offered two witnesses, Mr. and Mrs. McConnell, who had crossed this same street over the wagon road going from church the same night, and who were standing near Noble avenue and Second street, one block west of where the accident hap-

pened, at the time it occurred. Mr. McConnell swore that Mrs. Swan stated that she went over where the sidewalk was. Mrs. McConnell swore that Mrs. Swan said that she fell in a deep place close by the barn, which would mean, under the evidence, about the place where the sidewalk had been.

Mr. and Mrs. McConnell had passed over the road way, at this same point on this same night and evidently shortly before Mrs. Swan, in perfect safety and without experiencing, as least so far as they stated, any difficulty or danger whatever.

Mrs. Swan testified that she thought that the place where she went over "was not less than two feet, perhaps three," by which expression her further answer shows she meant two *feet*, and perhaps three *feet* deep.

The city contended, by what we are compelled to admit was stronger proof than that offered on her part, that the electric lights were burning; that it was light generally on this street; that the wagon road had been graded so that it was in a reasonably safe condition for travel, taking into consideration the fact that improvements were then being made.

This left the question fairly open for the jury as to whether or not she did pass down on the traveled way prepared or whether she went over the embankment outside of the traveled way. Her action can in no way be supported on the theory that she went without notice over the high part of the embankment and that the city was liable for not placing a danger signal there, for the action is not so prosecuted, and we must review it on the theory on which it was tried below. Had the question been properly presented to the jury it might have found

that it was the duty of the city to keep the street safe for travel at this point throughout its entire width, but the court could not hold that as a matter of law. This was a question of fact for the jury, to be determined from the evidence offered, under proper instructions, and in determining this the jury should take into consideration the proof as to how much of this street throughout its entire width had been in use and whether it was in the business portion of the city or in the residence part, whether the city at that place was densely or sparsely populated and all of the matters on which the jury could make its determination. The authorities are not harmonious on the question as to whether the city must keep the entire width of an open street in safe condition for travel, but the great weight of authority is that it is a question of fact for the jury and not a question of law for the court to determine.

Elliott on Roads and Streets, while giving both sides of the question and the authorities thereon, on page 455 states the rule thus:

"The general rule appears to be that the duty to keep in repair extends only to the 'traveled path' or portion of the way in actual use, provided it is wide enough to be safe."

This question was squarely involved in the case of *The City of Wellington v. Greyson*, 31 Kan. 99, in which the court, by Mr. Justice Brewer, said:

"In other words the city is not bound, as matter of law, to keep not only the traveled track in good and safe condition, but also to keep a space of a carriage width on each side of such traveled track free from posts, stones, or other objects large enough to upset a buggy or wagon running over them. And yet that is substantially what the court instructed the jury. It is unques-

tionably the duty of the city to keep its streets in a reasonably safe condition for travel in the ordinary modes. In 2, Dillon on Municipal Corporations, 3d ed., sec. 1019, the author says:

" 'It is sufficient, we think, if the streets (which include sidewalks and bridges thereon) are in a reasonably safe condition for travel in the ordinary modes, by night as well as by day; and whether they are so or not is a practical question, to be determined in each case by its particular circumstances.'

"In the discharge of this duty, in places it must keep the whole width of the street in a safe condition for travel. (*Bryant v. Biddlefield*, 39 Me. 193.) In other places it is sufficient if it keep a traveled track in good repair. (*Hull v. Richmond*, 2 Woodb. & M. 337; *Ireland v. Plank Road Co.* 13 N. Y. 526; *Bassett v. St. Joseph*, 53 Mo. 290; *Brown v. Glasgow*, 57 id. 157.)

"Whether in any given case the public needs are such as to require the whole width of the street to be kept in safe condition, is generally a question of fact for the jury. In 2 Dillon, *supra*, sec. 1016, the rule is thus laid down:

" 'Nor is a municipal corporation bound to keep all of its streets and all parts of the streets in good repair; but when it opens a street and invites public travel, it must be made reasonably safe for such use; but this does not necessarily imply as a matter of law that the whole width of the street must be in good condition. Whether the street was wide enough to be safe; whether it was in a reasonably safe condition for public use by travelers who use ordinary care to avoid injury, are almost always questions for the jury.' (See also *City of Wyandotte v. Gibson*, 25 Kan. 236; *Osage City v. Brown*, 27 id. 74; *Maullby v. City of Leavenworth*, 28 id. 745.")

In the case of *Craig v. City of Sedalia*, 63 Mo. 417, the court held, p. 419:

"In the case of *Bassett v. The City of St. Joseph*, (53 Mo. 290-303,) it was expressly decided that a city is not bound

to keep all of its streets in good repair under all circumstances; that it is only bound to keep such streets and parts of streets in repair as may be necessary for the convenience and use of the traveling public. It was further remarked in that case that 'it may be, and doubtless is the case, that there are streets and parts of streets in many cities which are not at present necessary for the convenience of the public, that will be brought into use by the growth of the city, or there may be streets that have more width than is necessary for the present use or the requirements of travel, and that all that is required in such cases, is that the city shall see that as the streets are required for use, they shall be placed in a reasonably safe condition for the convenience of travel.'

"The same doctrine was announced by this court in the case of *Brown v. Mayor of Glasgow*, (57 Mo. 157) where the foregoing extract was quoted and approved. (See also *Howard v. Bridgewater*, 16 Pick. 189.) Every defect or imperfection in the streets of a city is not actionable. It must appear that, under the particular circumstances of the case, it was the duty of the city to have removed the obstruction or repaired the defect which occasioned the injury, and that the person complaining was at the time in the exercise of ordinary care.

"These are questions of fact to be determined by the jury under appropriate instructions. In the case at bar the court declared as a law that it was the duty of the defendant to keep the whole of the street on which the accident occurred in repair. This was error."

In the case of *Kelly v. The Town of Fond du Lac*, 31 Wis. 179, the court, while holding that a party has a right to deviate from the traveled track, when the conditions are such as to create a reasonable belief of danger in the traveled track, used the following language with reference to the obligation of the city to keep the whole width of the street in safe condition for travel·

"The responsibility of towns, without doubt, primarily extends only to losses or damage sustained by reason of defects in the traveled portion of the highway, for they are not bound to keep the highway in its whole width in a suitable or safe condition for travel. It is, in general the duty of the traveler, therefore, to remain in the traveled track, or that part of the highway which, to a reasonable width, has been graded or prepared for that purpose.

\*    \*    "A person who in the lawful use of a highway, meets with an obstacle or other cause of insufficiency, may yet proceed if it is consistent with reasonable care so to do; and this is generally a question for the jury, depending upon the nature of the obstruction or insufficiency and all the circumstances surrounding the party."

In the case of *Goeltz v. The Town of Ashland*, 75 Wis. 642, the court again affirmed this doctrine, and said:

"This court has repeatedly held that it is not the duty of a town to prepare, and keep in repair, a public highway to the whole width thereof. (*Kelly v. Fond du Lac*, 31 Wis. 179-186-7; *Hawes v. Fox Lake*, 33 Wis. 443-444; *Mathews v. Baraboo*, 39 Wis. 677; *Prideaux v. Mineral Point*, 43 Wis. 523; *James v. Portage*, 48 Wis. 681; *Cartright v. Belmont*, 58 Wis. 373.")

We think this a safe doctrine to follow and one that cannot be injurious to either the traveler or the city; and that the instruction as given was one which, under the circumstances, was likely to and did mislead the jury, "and where inapplicable instructions are given which may have mislead the jury to the prejudice of the party complaining, the verdict cannot be permitted to stand." (*Mo. Pac. Ry. Co. v. Pierce*, 33 Kan. 61.)

There is a question raised as to the right of the plaintiff to recover for medical attendance, but as the testimony is not definite as to whether the medical attend-

ance was furnished upon the plaintiff's own individual contract or whether her husband was responsible for the same, we will not pass on this question, the error already noticed requiring the reversal of the case.

The judgment of the court below is reversed with directions to grant a new trial.

Dale, C. J., having presided in the court below, not sitting; all the other Justices concurring.