# HERNDON v. SALT LAKE CITY.

No. 1909.   Decided April 23, 1908 (95 ,Pac. 646).

1. PLEADING—ALLEGATIONS—CONCLUSION OF LAW—ADMISSIONS.  An allegation in a complaint that a city was charged with the duty of maintaining streets in a safe condition for public travel is a mere conclusion of law, and the city is not bound by it by reason of its admission thereof.

2. TRIAL—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.  An instruction that a city is required to use ordinary care to keep its streets, in a reasonably safe condition for travel, and that whether the streets are in such a condition is a question of fact to be determined in each case by the particular circumstances,   correctly states an abstract proposition of law, applicable to a street the whole width of which has been opened and worked for public travel, but is inapplicable to a street only part of which has been prepared for public travel, and is misleading in such a case, as leading the jurors to assume that it is the duty of a city to make and keep all of its streets in a reasonably safe condition throughout their entire width at all times and under all circumstances.

3. SAME.  Instructions should in all cases apply the law to the existing facts.

4. NEGLIGENCE—ACTIONS—INSTRUCTIONS.  In negligence cases, where the duty varies with the conditions, a mere general statement of the law with regard to the duty generally imposed is insufficient.

5. MUNICIPAL CORPORATIONS—DEFECTIVE STREETS—INJURIES TO TRAVELERS—NEGLIGENCE.  The gist of an action for personal injuries caused by a defective street is the negligence of the city, and there can be no actionable negligence unless the city did or omitted to do something which, in the exercise of ordinary care, it should have done, or omitted to do.

6. SAME.  A city, opening and undertaking to put the whole width of a street in condition for travel, and inviting the public to use the whole width, must exercise ordinary care to maintain the whole width in a condition reasonably safe; but a city, working only a part of the street, and putting that into condition for travel, is required only to maintain that part  in a reasonably safe condition.

7. SAME.  A city, in opening a street for travel, possesses primarily the discretion to determine whether it will prepare the whole width of the street for travel, though in the business portions of the city, or where travel and the convenience of the public require

34 Utah—5

it, the whole width of the street must generally be made passable
and in a reasonably safe condition, while in outlying portions it
may determine what portions of the streets it will prepare for
travel.

8. SAME—QUESTION FOR JURY. Whether a city, opening for travel
only a part of the width of a street, opened a sufficient part, may
be a question of fact.

9. SAME. Whether the streets are maintained in a reasonably safe
condition for travel throughout their entire width where the whole
width is open, or over that portion which is opened and prepared
for travel, is a question of fact to be determined by the jury from
the facts in the case.

10. SAME—INSTRUCTIONS. Where, in an action for injuries to a travel-
er, caused by a defective street, it appeared that the street had
not been prepared for travel throughout its entire width, and that
the accident occurred in that part which had not been prepared for
travel, the court must instruct the jury specially with regard to the
duty of the city to prepare for public travel such part of the street
as is reasonably sufficient for public travel; and, where the question
arises as to whether the city has prepared a sufficient width for
travel, the jury should be required to find from the facts whether
or not the space prepared was reasonably sufficient.

11. SAME—PLEADING. In an action for personal injury, caused by
a defective street, because of the failure of the city to prepare a
sufficient part of the street for public travel, the complaint should
allege as a ground of negligence the failure of the city to prepare
a sufficient part for public travel.

12. SAME—EVIDENCE—INSTRUCTIONS. Where, in an action for personal
injuries, caused by a defective street, it appeared that the street
was 132 feet between the lot lines, that the city had prepared only
a part of the width for public travel, and that the injuries occurred
at a place outside of such prepared part, the refusal to charge that
the city was not required to make passable the whole width of the
street, but was only required to improve and make passable such
portion thereof as was reasonably necessary for the needs of the
public, was erroneous, especially in view of the giving of a charge
that the city was required to use ordinary care to keep its street in
a reasonably safe condition for travel.

13. SAME. Where, in an action for personal injuries, caused by a de-
fective street, the evidence showed that the city had prepared only
a part of the street for public travel, and that the accident occurred
at a place outside of such part, it was error to fail to charge that
it was the duty of the plaintiff to pursue the traveled part of the
street, and that, if he departed therefrom negligently or heedlessly,
or for his own convenience, he assumed the risk, and could not
recover.

14. SAME—BARRIERS. A city as a general rule is not required to put up barriers to prevent travelers from driving off the traveled portions of the streets, and barriers are generally required only where an obstruction or excavation is placed in the traveled part of the street, or where the excavation is so near the traveled part that it makes it a dangerous place to pass over, for barriers are intended to make the passageway safe, and not to mark or define the limits of the way.

15. SAME—WARNING SIGNALS. A city, opening and preparing only a part of the street for use, and permitting the remaining portion to remain rough with obstructions on it, need not as a general rule mark the limits of the traveled portion, or place signals at or near the obstructions to warn travelers; and it is the duty of the traveler to remain within the traveled portion, and, if that portion is not reasonably sufficient for public use, he may complain on that ground.

16. SAME—BARRIERS. Where a city maintains a street on two levels, one considerably higher than the other, and the two are divided by an abrupt declivity, and both levels are open for travel, it may be incumbent on the city to place a barrier along the upper level to prevent accidents in driving over the edge; the barrier being simply for the purpose of making the driveway reasonably safe.

17. SAME—INSTRUCTIONS. In an action for personal injuries, caused by a defective street, only a part of which was opened and prepared for public travel, the jury, on it appearing that the accident occurred on a part of the street not prepared for public travel, should be instructed with regard to the duty of a city in opening and preparing its streets, and when and for what purpose barriers are required, and if, in view of all the circumstances, the street was not reasonably safe without barriers, the city would be liable.

18. SAME. In an action for personal injuries, caused by a defective street, only a part of which was prepared for public travel, the jury, on it appearing that the accident occurred on a part of the street not prepared for public travel, should be instructed that it is not ordinarily the duty of a city to place lights or warning signals or to put up barriers along the margin of its streets, or to mark or define the traveled portions of them, and that the signals and barriers are required only to point out obstructions or excavations in the traveled part.

19. SAME. Unless the duty to light the streets is imposed on a city by statute or by its charter, the failure to maintain lights in the streets is generally not negligence.

20. SAME—CONTRIBUTORY NEGLIGENCE. The absence of lights in the streets of a city may be important on the question of contributory negligence of a traveler injured because of a defective street.

21. TRIAL—REFUSAL TO GIVE INSTRUCTIONS COVERED BY THOSE GIVEN. It is not error to refuse requested instructions covered by the court's general charge.

22. SAME. Requested instructions containing correct statements of the law, but ending by directing the jury to determine the whole case on a single issue not decisive of the whole case, are properly refused.

23. EVIDENCE—OPINION OF WITNESSES—CONCLUSION. On the issue of the sufficiency of the prepared portion of a street in view of the public travel, witnesses cannot testify directly that the portion prepared for travel was sufficient for public travel, since that is a mere conclusion of the witnesses, and the reasonable sufficiency of the street is the ultimate fact to be found by the jury.

24. MUNICIPAL CORPORATIONS—STREETS—SAFE CONDITION. In an action for personal injuries, caused by a defective street, only a part of which had been prepared for public travel, if it was of sufficient width and reasonably safe within that width to permit plaintiff to pass over it at the time, and he departed from the traveled part without cause, he cannot complain that the street was not worked to a wider extent, on the sole ground that others at other times may have required more space in passing over it.

APPEAL from District Court, Third District; M. L. Ritchie, Judge.

Action by George L. Herndon against Salt Lake City. From a judgment for plaintiff, defendant appeals.

REVERSED, AND NEW TRIAL GRANTED.

*Ogden Hiles* and *H. J. Dininny* for appellant.

*James Ingebretzen* and *A. L. Hoppaugh* for respondent.

### APPELLANT'S POINTS.

A city may pile stumps or rocks on, or leave the unwrought portion of a street as it was by nature, and if the traveled portion is good, it will not be liable for damages sustained by one who goes off it. (*Perkins v. Fayette,* 68 Me. 152.)

A municipality is not bound to keep and maintain in reasonably safe condition for travel the full located width of

the highway. (Williams on Municipal Torts, p. 134, sec. 86, p. 142, sec. 90; Wellington v. Gregson, 31 Kan. 99, 1 Pac. 253; Morse v. Belfast, 77 Me. 45; Bassett v. St. Joe, 53 Mo. 303; Trix v. Kansas, 84 Mo. 642; Prideaux v. Mineral Point, 43 Wis. 523; Austin v. Prix, 72 Tex. 400; Kossman v. St. Louis, 153 Mo. 293; Rymer v. Menasha [Wis.], 73 N. W. 41; Fullam v. Muscatine [Iowa], 30 N. W. 861-2.)

When the municipality has prepared and maintained a way of sufficient width, smooth and convenient for travel, its duty in this respect has been accomplished. (Morse v. Belfast, supra; Sale v. Turnpike, 147 Ind. 324, 46 N. E. 669; Mitchell v. Tell City [Ind.], 81 N. E. 594.)

If a traveler without necessity (caused by the imperfect or dangerous condition of the traveled road), or for his own convenience or pleasure, deviates from the traveled track, it being in good condition, and in so doing meets with an accident from some cause outside such track, the municipality will not be liable for the resulting damage. (2 Thompson on Negligence, p. 769; 5 Thompson on Negligence, sec. 6011; Kelly v. Fond du Lac, 31 Wis. 186; Sykes v. Pawlet, 43 Vt. 446; Rice v. Montpelier, 19 Vt. 470; Nelson v. Spokane, 87 Pac. 1048; Goeltz v. Ashland, 44 N. W. 770, and cases cited; Brown v. Glasgow, 57 Mo. 156; Craig v. Sedalia, 63 Mo. 417; Guthrie v. Swan, 41 Pac. 87; King v. Harley, 85 Me. 523; Ranke v. Smith, 63 Ill. App. 522; Marshall v. Ipswich, 100 Mass. 523; Keyes v. Marcellus, 50 Mich. 439; Stricker v. Reedsburg, 77 N. W. 897.)

When a plaintiff has omitted proper precautions in the equipment of his team, even when the road is bad, the question of his negligence in regard to such equipment, is for the jury. (Allen v. Hancock, 16 Vt. 231; Patchen v. Walton, 17 N. Y. App. Div. 158.)

If a defect in the carriage contributed jointly with a defect in the street to produce the injury to plaintiff, he cannot recover. (Farrar v. Green, 32 Me. 574; Moon v. Abbott, 32 Me. 46; Anderson v. Bath, 42 Me. 346.)

A city is not liable for not erecting a barrier where the ab-

sence of it is not proximate cause of the accident. (*Judd v. Claremont,* 66 N. H. 416; *Patchen v. Walter,* 45 N. Y. S. 145.)

A city is not liable for failure to maintain barriers when the horse leaves a traveled road which is in good condition, and wide enough to drive upon with safety, through any cause for which the municipality is not responsible. (*Bell v. Wayne,* 123 Mich. 386, 82 N. W. 216; *Springs v. St. Clair,* 56 N. W. 18.)

The mere absence of a barrier upon the side of a highway where there is a perpendicular descent when the road is hard and smooth is not enough to charge negligence. (*Glaker v. Helm,* 82 Hun 311; *Lane v. Hancock,* 142 N. Y. 510; *Miller v. Hebron,* 39 N. Y. S. 381.)

A city is not liable for negligence for not erecting a barrier when the place to be guarded is twenty-five feet or more from the traveled part of the road. (*Hannibal v. Campbell,* 86 Fed. 297; *Marshall v. Ipswich,* 100 Mass. 523; *McHugh v. St. Paul,* 67 Minn. 441; *Murphy v. Gloucester,* 105 Mass. 470.)

RESPONDENT'S POINTS.

The following authorities support the proposition that it is the city's duty to keep the entire width of a public street in a reasonably safe condition for public travel by night as well as by day. (*Tucker v. Salt Lake City,* 10 Utah 173; *Scott v. Provo,* 14 Utah 31; *City v. Swisher,* 85 Pac. 1110; *Stafford v. City,* 64 Iowa 251; *Crystal v. City,* 65 Iowa 502; *Niblett v. Nashville,* 59 Tenn. 684; 15 A. & E. Ency of Law, 454. 1 Thompson on Negligence, Vol. 5, secs. 6005-6012. *Prideaux v. Mineral Point,* 43 Wis. 513. Elliott on Roads and Streets, page 455.)

FRICK, J.

This is an action for damages for personal injuries claimed to have been caused by an alleged defect in one of the streets of Salt Lake City. The negligent acts complained of are alleged to be substantially as follows: (1) Negligence

in maintaining a "dugway" in the intersection of Twelfth East and Second South streets in such manner as to cause an embankment to form from three to five feet in height, which was allowed to remain diagonally across the intersection of said streets; (2) the failure of the city to construct and maintain a railing or barrier along the traveled part of said intersection and said embankment "to prevent persons and vehicles on said traveled part from passing over said bank," and (3) the failure of the city to place and maintain a light or other signal at or near said embankment to warn persons using the street of the existence thereof. Briefly stated, the facts developed at the trial were substantially as follows: Second South street runs east and west, and Twelfth East street runs north and south. These two streets intersect or cross each other in the eastern part of the city, and within a block or two from the easterly limits of the city. At the point where these two streets meet and cross is a natural bluff running in a northeasterly and southwesterly direction. This bluff is of considerable height, and rises abruptly forming a sort of bench. The natural topography of the land both above and below this bluff is comparatively level, inclining somewhat to the west. These two streets meeting, as they do, at the point where this bluff parts the lower from the upper level, made both streets practically impassable in the natural state of the ground. The bluff was worked down somewhat, and in doing so it left a somewhat steep incline to the north on Twelfth East street, and to the west on Second South street. Both of these streets are 132 feet wide between lot lines, and have been platted and surveyed for many years. In order to make the streets passable the city made a roadway on the east side of Twelfth East street going up the hill to the south, and also one on the west side of this street. On Second South street a roadway was prepared on the north side of that street, and in doing so the south side of this roadway was cut down somewhat, and it is this that is called the "dugway" in the complaint, and the raise caused by this cut is called the "embankment" or "bank." This work left a portion of the centers of both streets in an unfit condition for

travel, the principal part of which fell within the intersection, and was lengthened out somewhat to the north and west of the intersection, so that this unwrought portion of these two streets at the point aforesaid resembled somewhat the form of a boot or stocking tapering to a point at both extremities. By reason of the declivity at the point in question the city, in making a passage or driveway on the north side of Second South street going east, caused the embankment or bank, as stated above, to be formed along the south margin of the traveled portion of the street, which, the testimony shows, was from two to three feet high, descending somewhat abruptly from the top of the embankment to the worked and traveled portion of the street. These drive or passage ways around this unworked portion, as the testimony discloses, were all the way from twenty to thirty feet in width, and all were reasonably smooth and passable for teams and vehicles. It also appears that the travel at that point was not very heavy, and that the city both to the south and east of the intersection was somewhat sparsely settled. In view of the foregoing, in going either up or down the hill, a person driving over this intersection, in order to continue on in the driveway prepared by the city, would have to drive either to the right or left in passing around the unworked portion lying in the center of the intersection of these two streets. The unworked portion had no well-defined banks along its upper or eastern and southern margin, but on the lower part there was more or less of a bank, as above stated. In the center of the intersection, and upon the unworked portion thereof, stood an electric light pole with an arc lamp upon its top. The pole and light were the same as those used for lighting all parts of the city. At the time of the accident there were some weeds on the unworked part of the intersection which had grown up during the preceding summer and fall. The electric light was lit, but made a dim light, as some of the witnesses described it. Under the conditions above described, on October 31, 1905, the respondent, at about 6:15 o'clock p. m., in making the turn west on the intersection of Twelfth East street to drive west on Second South street

with a team and heavy carriage, departed from the traveled part of the street or intersection and drove diagonally across the unworked part, and in doing so one of the front wheels of the carriage went over the embankment forming the north margin of the unworked part of the street, and threw him from the seat, and he fell to the driveway below and was injured. Just before driving north he had driven south over this intersection, but, as the night was dark, he said he had not noticed the actual condition of the street, and in going back, in order to relieve his horses somewhat from the pressure of the carriage, respondent says: "I made a wide turn to go down easy, and as I came to the slant of the hill I got too far over. I didn't make a sharp turn, because I was afraid the team would get away from me down the hill." It is thus reasonably clear that respondent, instead of turning west along the worked part of the street, drove off the driveway and drove onto and across the unworked portion, and thus encountered the bank which was along the south margin of the northerly driveway, and in going over this bank was thrown from the carriage seat and injured. Mr. Zerbe, a witness for respondent, was with him on the driver's seat at the time, and he testified that he could see that respondent was driving off the traveled part of the street, but did not see the bank ahead of them. There was no other light or signal excepting the arc lamp on the pole described above, nor was there any barrier along the bank, or other sign of warning. The jury returned a verdict for the respondent upon which the court entered judgment, and the city presents the record for review on appeal.

While the errors assigned are numerous, we shall discuss such only as we deem material. In submitting the case to the jury the court gave the following instruction, which was duly excepted to by the city; and the giving of it is now urged as error: "(10) You are instructed that the defendant is required to use ordinary care to keep its streets in a reasonably safe condition for travel in the ordinary modes by night as well as day, and whether they are so or not is a question of fact to be determined in each case by its par-

ticular circumstances." As a modification of the foregoing
instruction, the city offered a request whereby it asked that
the court instruct the jury in substance that the city was not
required to improve or make passable the whole width of the
intersection, or the whole width of the two streets; that it
was only required to improve and make passable such por-
tion of said streets and intersection as was reasonably neces-
sary for the needs of the public; and that it was the duty of
the city to exercise ordinary care to keep in a reasonably safe
condition for passage and travel such parts of the streets
only as had been improved and opened for travel, if such
portion was reasonably sufficient for the needs of the pub-
lic using these streets. The court refused the request, and
the duty of the city in respect to its streets is limited in the
instructions to what is contained in the instruction copied
above. The instruction given, and the refusal to instruct as
requested, or to so instruct in substance, present the prin-
cipal question discussed by counsel.

Counsel for respondent insist that appellant is not in a
position to raise the question, because respondent in his com-
plaint alleged that the city "was charged with the duty of
maintaining the said streets in a safe and fit condition for
public usage and travel," which allegation the city admitted
in its answer. This contention is not tenable. The allega-
tion at most is a mere conclusion of law, and could have been
stricken from the complaint, and the city is not bound by the
admission of such an allegation. (1 Bates Pl. & Pr. 233.)
While the instruction correctly states an abstract proposition
of law applicable to a street, the whole width of which has
been opened and worked for public use and travel, it is wholly
inapplicable to the facts as developed in this case. The state-
ment respecting the duty of the city with regard to main-
taining its streets is so general that to a jury of laymen it
practically afforded no information or guide whatever under
the facts and circumstances developed at the trial. Such
general statements, as was said in *City of Guthrie v. Swan,*
3 Okl. 116, 41 Pac. 84, are misleading in that the jurors will
naturally assume that it was the duty of the city to make and

keep all of its streets in a reasonably safe condition throughout their entire width at all times and places and under all circumstances. Instructions should in all cases apply the law to the existing facts and circumstances, and in cases of negligence, where the duty varies with the conditions, a mere general statement of the law with regard to the duty generally imposed, is, if possible, worse than not to instruct at all. If it be the law that the duty of the city with respect to its streets is always and under all circumstances the same, then the instruction was proper enough. If, however, such is not the law, and the duty varies in accordance with conditions and circumstances, then it may be that the city had discharged its full duty with respect to a given street, or a particular place in such street, although it did not comply with what is said in the instruction above quoted.

The gist of the action in question was negligence, and there could be no actionable negligence unless the city did or omitted to do something which, in the exercise of ordinary care and prudence, it should have done or omitted to do. The authorities with regard to the duty imposed by law upon municipalities in opening, improving, and maintaining the streets in a reasonably safe condition for travel throughout their entire width are not in perfect harmony. In 15 A. & E. Ency. L. (2d. Ed.) at page 452, after stating the law applicable to country roads to be that such roads need not be opened up nor maintained in a reasonably safe condition for travel throughout their entire width, the author proceeds as follows:

"In regard to city streets it would seem that the rule might well be different from that prevailing in the case of country roads, and accordingly it is stated in some cases that there is an absolute duty to keep in repair the whole width of the street. These statements may, however, be viewed with reference to the particular circumstances under which they are made, and in the best-considered cases it is stated that even in the case of city streets the width which must be kept in repair is a matter dependent on particular circumstances, among which, apparently to be considered, are the amount of travel and the question whether the city has ever opened the whole street for travel by doing work thereon, so as to induce persons to use the whole width thereof."

Upon an examination of the cases it will be found that what the author says with regard to the statements contained in the cases, and that such statements must be reconciled with the particular facts before the courts in making them, is not overdrawn. In fact it will be found that cases emanating from the same courts are not infrequently cited upon both sides of the proposition; namely, that it is the duty of the city to make its streets passable and to maintain them in a reasonably safe condition throughout their entire width, and also that no such duty is imposed. This apparent conflict is due to the fact that in those cases where the evidence was to the effect that the city had opened, worked, and prepared for travel and public use the whole width of the street the court simply stated that. it was the duty of the city to maintain such streets reasonably safe for travel throughout their entire width, and that a failure to do this constituted negligence. In those cases, therefore, the question involved here, as a general rule, is not discussed; but the duty upon the part of the city to maintain the whole street safe is assumed.

There are also numerous cases where defects of sidewalks only were in question, and in most of those cases, in speaking of sidewalks as parts of the streets, it is also asserted that the whole width of the sidewalk—sometimes the expression "streets" is used—must be maintained in a reasonably safe condition for travel whether in daytime or in nighttime. Judge Dillon, in his excellent work on Municipal Corporations, in speaking upon this question, says:

"Nor, as already incidentally stated, is a municipal corporation bound to keep all of its streets and all parts of the street in good repair. When it opens a street and invites public travel, it must be made reasonably safe for such use; but this does not necessarily imply as a matter of law that the whole width of the street must be in good condition. Whether the street was wide enough to be safe, whether it was in a reasonably safe condition for public use by travelers who use ordinary care to avoid injury, are almost always questions for the jury." (2 Dill. Mun. Corps. [4th Ed.], sec. 1016.)

In *McArthur v. Saginaw*, 58 Mich. 357, 25 N. W. 313, 55 Am. Rep. 687, the Supreme Court of Michigan, in pas-

sing upon an instruction somewhat similar in its terms to the one above set forth, use the following language:

"The jury undoubtedly understood from the rulings of the court and the questions laid before them that it was for them to decide how much of the streets should be kept in condition for general travel, and they found that the entire street ought to be clear of obstructions, and it must be presumed they based their verdict for plaintiff on that idea. This was a palpable error, for there can be no doubt of the right of every city to determine what part of the nominal highway shall be devoted to the various purposes of passage, and upon such a subject the municipal discretion must prevail."

In the foregoing case it appeared that the actual width of the street as platted and surveyed was sixty-six feet, while the part that was worked and made passable was but thirty-one feet. The injury resulted by coming in contact with an obstruction which was outside of the thirty-one feet, but within the exterior boundaries of the street, and which was placed there by an abutting owner, apparently with the consent of the city. In *Perkins v. Fayette,* 68 Me. 152, 28 Am. Rep. 84, it is said:

"The judge instructed the jury that towns were not required to render the road passable for the entire width of the whole located limits, and that the duty of the town was accomplished by making a sufficient width of the road in a smooth condition so that it would be safe and convenient for travelers."

This the Supreme Court of Maine held to be a 'correct statement of the law, and it was commented on and followed in *Morse v. Belfast,* 77 Me. 44, and in subsequent cases by that court. In *City of Wellington v. Gregson,* 31 Kan. 102, 1 Pac. 255, 47 Am. Rep. 482, Mr. Justice Brewer, in speaking of the duty imposed by law upon cities in respect to the maintenance of their streets, says:

"In the discharge of this duty, in places it must keep the whole width of the street in a safe condition for travel. . . . In other places it is sufficient if it keep a traveled track in good repair."

In *Bassett v. City of St. Joseph,* 53 Mo., at page 303, 14 Am. Rep. 446, the Supreme Court of Missouri, in speaking

of the duties imposed on cities in this regard, say that the city

"Is only bound to keep such streets and such parts of streets in repair as are necessary for the convenience and use of the traveling public. It may be, and doubtless is, the case that there are streets or parts of streets in many cities which are not at present necessary for the convenience of the public that will be brought into use by the growth of the city, or there may be streets that have more width than is necessary for the present use or the requirements of travel."

A much more recent case from the Supreme Court of Missouri we think, not only states a practical, but, as we conceive, the true, rule to be, that, if the city opens and undertakes to put the whole width of the street in condition for travel and invites the public to use the whole width, then it is the duty of the city to exercise ordinary care so as to maintain the whole width of such a street in a condition reasonably safe. If, however, the city works only a part of the street and puts it into condition for travel, then it is required to maintain only that part in a reasonably safe condition, and whether the part that is opened and worked is reasonably sufficient for public convenience may be a question of fact. (*Kossman v. St. Louis,* 153 Mo. 299, 54 S. W. 513.) In *Kelley v. Fond du Lac,* 31 Wis. 179, it is said:

"Towns are not bound to keep highways in a suitable condition for travel in their whole width; and their liability is limited primarily to damages caused by defects in the traveled track."

This case is approved and followed in the later Wisconsin cases, and especially in the case of *Rhyner v. City of Menasha,* 97 Wis. 523, 73 N. W. 41. In *Fulliam v. City of Muscatine,* 70 Iowa 438, 30 N. W. 862, the Supreme Court of Iowa, in sustaining the trial court in its refusal to give an instruction wherein the jury were told that it was the duty of the city to maintain the entire width of a street in a reasonably safe condition, say:

"We are not prepared to say that it is the duty of a city to keep every street safe for travel throughout its entire width, regardless of its location, amount of travel, and all other circumstances."

We refer to this case for the special reason that the Iowa court is sometimes cited as holding to the contrary doctrine; namely, that the entire width of the street must be maintained in a reasonably safe condition. Where such expressions are found in the cases from the Iowa court the facts were such as required the whole width of the street to be kept in safe condition. The following cases make this clear, namely: *Crystal v. Des Moines*, 65 Iowa 502, 22 N. W. 646; *Stafford v. City of Oskaloosa*, 64 Iowa 251, 20 N. W. 174. In a very recent case (1907) decided by the Appellate Court of Indiana, in speaking upon this subject it is said:

"A municipal corporation is bound to keep its streets and sidewalks reasonably safe and convenient for public travel either by day or by night; but when the municipality has prepared and maintained a way of sufficient width, smooth and convenient for travel, its duty in this respect has been accomplished."

It is not necessary to quote further from the decided cases, and from among the numerous cases that might be cited we shall refer only to the following: *City of Austin v. Ritz*, 72 Tex. 401, 9 S. W. 884; *Goeltz v. Town of Ashland*, 75 Wis. 642, 44 N. W. 770; *Marshall v. Ipswich*, 110 Mass. 522; *City of Hannibal v. Campbell*, 86 Fed. 298, 30 C. C. A. 63; *Tasker v. Farmingdale*, 85 Me. 525, 27 Atl. 464; *Craig v. City of Sedalia*, 63 Mo. 417; *City of Guthrie v. Swan*, 3 Okl. 116, 41 Pac. 84.

The general doctrine that may be deduced from the cases that have considered and passed upon facts such as those in the case at bar may be stated as follows: That in opening a street for travel, whatever may be its nominal or platted width, it is primarily a matter within the discretion of the city to say whether it will prepare the whole or only a portion of the width of the street for travel; that in the business portions of the city, or where travel and the convenience of the public require it, the whole width of the street must generally be made and maintained passable and in a reasonably safe condition; that where the whole width of the street has been prepared and opened for travel, whether primarily necessary or not, the city must thereafter maintain the whole

street in a reasonably safe condition throughout its entire width; that in some places, and especially in the outlying portions of the city, it may ordinarily determine what portions of the streets it will prepare for travel, and in such places it need only maintain that portion which is opened and set apart for travel in a reasonably safe condition; that whether the city has prepared a sufficient width for passage to respond to the needs of the public may be a question of fact for the jury, and as to whether the streets are maintained in a reasonably safe condition for travel (whether throughout their entire width where the whole width is opened, or over that portion which is opened and prepared for travel), is always a question of fact to be determined by the jury from all the facts and circumstances in the particular case. If it is made to appear, therefore, that the street is not one that has been prepared for travel throughout its entire width, or the particular place in question is one where this has not been done, the court should instruct the jury specially with regard to the duty of the city in this regard; and, if the question arises as to whether the city has prepared a sufficient width for travel where less than the whole width has been prepared, the jury should be required to find from all the facts and circumstances whether or not the space prepared by the city was reasonably sufficient, and in case the claim is made that the space prepared is insufficient, it seems to us this should be alleged in the complaint as one of the grounds of negligence, so that the city may be prepared to meet it at the trial. It seems to us no other rule is either practical or reasonable. The streets in this city, as disclosed by this record, are 132 feet from lot line to lot line, a portion of which is usually set apart for sidewalks. At the place where the accident in question occurred there were no sidewalks. If the theory of respondent is to prevail, and as it might have been assumed by the jury from the instruction, then the city would be compelled to maintain all of its wide streets throughout their entire width in a reasonably safe condition at all times and under all circumstances. Any person might then at will go or drive anywhere between the lot

lines either by day or night, and if he encounters an obstacle, whether natural or artificial, and is injured thereby, the city must respond in damages if the jury find that the street was not reasonably safe with the obstruction in it. If, therefore, a person may drive anywhere and may presume the whole width of the street to be safe, how can a jury escape the conclusion that any obstruction anywhere makes the street unsafe? In this case we think the court, in substance at least, should have instructed the jury as requested by the city in its twelfth request. The refusal to do this, and especially in connection with instruction 10 given by the court, was prejudicial error. We think further that the facts in this case are such that the court should have instructed the jury that it was the duty of respondent to pursue the traveled portion of the street, or that part which was worked and prepared by the city for travel, and that if he departed therefrom intentionally or heedlessly or for his own convenience, or for other reasons dependent upon his own volition, he assumed the risk in doing so. It is not the law that a person driving on the streets in all parts of the city may at will depart from the traveled track either by day or night, and if he encounters a natural or artificial obstruction and suffers injury that he may recover damages from the city. (*Tasker v. Farmingdale*, 85 Me. 523, 27 Atl. 464; *Goeltz v. Town of Ashland*, 75 Wis. 642, 44 N. W. 770; *Marshall v. Ipswich*, 110 Mass. 522; *Barnes v. Chicopee*, 138 Mass. 66, 52 Am. Rep. 259.)

The contention that this court has held to the contrary on any one or more of the foregoing propositions cannot be sustained. These questions were not involved nor discussed in the cases cited by counsel, namely: *Tucker v. Salt Lake City*, 10 Utah 173, 37 Pac. 261; *Scott v. Provo City*, 14 Utah 31, 45 Pac. 1005; and *Naylor v. Salt Lake City*, 9 Utah 491, 35 Pac. 509. The first two cases were cases of defective sidewalks, and the court, in speaking of the width to be maintained, of course referred to the sidewalks which had been opened for travel throughout the whole width thereof, and for that reason ought to have been maintained for that

width. The last case was one where an artificial obstruction was placed in the traveled portion of the street without any guards or signals to warn persons thereof. So far as we know this court has never passed upon the direct questions presented in this case. As we have pointed out, the question of the lack of lights and barriers was raised in the complaint. In submitting the case to the jury the court did not say anything about these matters, but from what was said in the general charge which we have copied the jury may well have inferred that the city was negligent in not putting up a barrier along the bank referred to, or in not placing a signal light as a warning to travelers, and that for that reason if for no other they may have found the street was not in a reasonably safe condition. In this regard the charge was again too general. In view that the case will have to be sent back for a new trial, it is perhaps not improper for us to indicate our views with regard to these issues for the guidance of the court on the second trial. As a general rule the city is not required to put up barriers to prevent travelers from driving off the traveled portions of the streets. Barriers are not required for this purpose. They are generally required only where an obstruction or excavation is placed or made in the traveled part of the street, or where the excavation or dangerous declivity is so near the traveled part of the street that it makes it a dangerous place to pass over. In other words, barriers are intended to make the passageway safe, and not to mark or define its limits so as to warn travelers not to drive outside of them. This is well illustrated by the following cases: *Barnes v. Chicopee,* 138 Mass. 67, 52 Am. Rep. 259; *City of Hannibal v. Campbell,* 86 Fed. 298, 30 C. C. A. 63; *McHugh v. St. Paul,* 67 Minn. 441, 70 N. W. 5; *Tasker v. Farmingdale,* 85 Me. 523, 27 Atl. 464; *Marshall v. Ipswich,* 110 Mass. 522; *Goeltz v. Town of Ashland,* 75 Wis. 642, 44 N. W. 770. If the city, therefore, opens and prepares only a part of the street for use, and the remaining portion is rough or has obstructions upon it, it is not, as a general rule, the duty of the city to mark the limits of the traveled portion, or to place signals at or near such

obstructions to warn travelers.   It is the duty of the traveler
to remain within the wrought and traveled portion of the
street, and if that portion is not reasonably sufficient for pub-
lic use he may complain upon that ground as we have point-
ed out above.   In this regard it may be said that, where a
city maintains a street upon two levels, one considerably high-
er than the other, and the two are divided by an abrupt decliv-
ity, and both levels are opened for travel, then it may be
incumbent upon the city to place a barrier along the upper
level to prevent accidents in driving over the edge.   But
this, again, is simply for the purpose of making the drive-
way reasonably safe, and is well illustrated in the case of
*Prideaux v. City of Mineral Point,* 43 Wis. 513, 28 Am.
Rep. 558.   In cases, therefore, where a city prepares only
a portion of the street, it may be a question of fact as to
whether the portion opened for travel is reasonably sufficient.
As to whether it is reasonably safe in view of all the surround-
ing circumstances is always a question of fact.   The jury,
therefore, should be instructed with regard to the duty of the
city in opening and preparing its streets, and when and for
what purposes barriers are required, and if, in view of all
the circumstances, the street was not reasonably safe without
barriers, and the jury so find, then the city would be liable.
The jury should be distinctly told that it is not ordinarily the
duty of the city to place lights or warning signals, or to
put up barriers along the margins of its streets, or to mark
or define the wrought or traveled portions of them, and that
these are required only to point out obstructions or excava-
tions in the traveled part of the street, or, where the whole
street is opened, to point out where they are so that they may
be avoided, and further, that if there be an excavation in the
margin of the street or so near it that it may be dangerous
to any one using the street, then that in all such cases bar-
riers or signals reasonably sufficient to point out the danger
or to keep one from driving over the one or falling into the
other   are usually required.   In view of the whole record
we are not clear as to whether respondent contends that the
city was negligent in not lighting the street properly, or

only in not having a light as a signal of warning
at the embankment. As to the duty of the city to light
its streets generally it may be said that no such duty exists
at common law. Unless the duty is imposed by statute or
by the city's charter, the failure to put up and maintain lights
in the streets generally is not negligence. (*Mitchell v. Tell
City* [Ind. App.], 81 N. E. 594; *McHugh v. St. Paul,* 67
Minn. 441, 70 N. W. 5; and cases there cited.) The absence of
lights may, however, be important upon the question of con-
tributory negligence. To what extent a city may be re-
quired to maintain lights in its streets generally in case it
voluntarily assumes the duty to light them is a question not
now involved, and we express no opinion upon it. As to
when and under what circumstances a city must put up and
maintain signal lights we have already discussed.

Upon the other assignments respecting the refusal of the
court to give the other requests offered by the city we are of
the opinion that those were sufficiently covered by the court's
general instructions. We remark, however, for the benefit
of counsel, that about all the requests offered uniformly end-
ed with the request to find for the city. It does not neces-
sarily follow that because an instruction states the law fully
and correctly upon one issue the jury should therefore find
generally for the plaintiff or the defendant as the case may be.
The jury should be told what their findings' should be upon
that issue only unless the particular issue is decisive of the
whole case. Trial courts very often must refuse, and this
court is compelled to sustain the refusal, to give correct state-
ments of the law simply because they end by directing the
jury to determine the whole case upon the one request. Nearly
all of appellant's requests, ten or twelve in number, end in
this way, and the court did not err in refusing them for that
reason if for no other.

The contention that the court erred in not permitting wit-
nesses for the city to testify directly that the driveway at
the place of the accident was sufficient for public travel is
not tenable. All these questions called for the witnesses'
conclusions merely. The reasonable sufficiency of the street

is the ultimate fact to be found by the jury, and it must be found from the evidence with respect to the location of the street, the number of persons who have occasion to use it, the surrounding circumstances, and all the conditions bearing upon this question.  Moreover, if a street were in fact insufficient for the public needs, but if no one else were attempting to use it at the time of the accident, and there was ample room for the wagon or carriage to pass, it may well be that the person who complains may not have any cause for complaint upon that ground. The question is, was the street sufficient for the purposes of the plaintiff at the time of the accident?  If it was, then it was not material whether the street was opened and worked sufficiently wide to meet all public requirements or not.  If it was of sufficient width and reasonably safe within that width to permit the plaintiff to pass over it at the time, and he departed from the traveled part without cause for doing so, he cannot complain that the street was not worked to a wider extent upon the sole ground that others at other times may have required or might require more space in passing over it.  The defect, if any there be in this regard, under all such circumstances, would not cause nor directly contribute to the injury, and therefore the person injured may not complain, although others might have cause to complain under different circumstances.

From what has been said, it follows that the judgment should be, and it accordingly is, reversed, with directions to the district court to grant a new trial.  Costs to appellant.

McCARTY, C. J., and STRAUP, J., concur.