## CONDIE v. RIO GRANDE WESTERN RY. CO.

No. 1933. Decided August 15, 1908 (97 Pac. 120).

1. MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE—QUESTION FOR JURY. Where an employee, working under a locomotive over a pit in a roundhouse, was injured by another engine being run into the locomotive, the question of negligence is for the jury; the evidence being conflicting on the questions whether warnings were given, and, if so, whether they were sufficient and timely, under the circumstances.

2. TRIAL—DIRECTION OF VERDICT—QUESTION FOR JURY. The court in passing on defendant's request to direct a verdict is not bound to accept the statement of a witness as conclusive on the subject, because there is no direct testimony of an eyewitness to the contrary, when there are other facts and circumstances from which the jury could properly find otherwise.

3. MASTER AND SERVANT—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY. Where the locomotive under which an employee was working was run into by another engine without warning, he was not guilty of contributory negligence as matter of law, even if he attempted to get out between the wheels of the locomotive, instead of through the wider space between the engine and the tender, and while doing so the locomotive was again pushed and moved onto him.

4. TRIAL—REQUESTED INSTRUCTIONS. Refusing a requested charge is not error; part of it being bad.

5. MASTER AND SERVANT—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE. The part of a requested charge that it is the duty of a servant "to choose the safest course in performing his work" is too broad, as there may be two natural and usual ways of performing the work, each of which is reasonably safe, and neither dangerous, but one safer than the other, in which case the servant is not guilty of negligence as matter of law in not choosing the safer one.

6. TRIAL—INSTRUCTIONS—SINGLING OUT FACTS NOT CONCLUSIVE. A requested charge which singles out an isolated fact, not decisive of the whole case, and directs a verdict, if this fact be found, is properly refused; and hence a requested charge di-

recting a verdict for a master, if the servant, in getting out from under his engine, which, while he was working under it, was struck and moved by the negligence of the master, did not choose the safest way in getting out, is properly refused, if ignoring the elements of sudden peril and emergency, of which there was evidence.[1]

7. SAME—REQUESTS COVERED BY INSTRUCTIONS GIVEN. It is enough that the court by its charge concretely applied to the facts the principle of law which a party attempted to state abstractly in its request to warrant a refusal of the request.

APPEAL from District Court, Third District; T. D. Lewis, Judge.

Action by Sophie Condie, as administratrix of Joseph Condie, deceased, against the Rio Grande Western Railway Company.   Judgment for plaintiff.   Defendant appeals.

AFFIRMED.

*Van Cott, Allison & Reter* for appellant.

*J. H. Bailey* and *E. A. Walton* for respondent.

#### APPELLANT'S POINTS.

"Thus, a railway employee, when about to put himself in such a position with respect to a stationary car that, if it should be moved unexpectedly he will in all probability be injured, is bound to notify all other employees whose work may, in its progress, produce a movement of the car, or to put out a flag or other signal which will show them where he is."   (*Norfolk & W. R. Co. v. Graham,* 31 S. E. 604; *Lumpkin v. So. R. Co.,* 24 S. E. 963; *Hulien v. Chicago & N. W. R. Co.,* 82 N. W. 710; *Spencer v. Ohio & M. R. Co.,* 29 N. E. 915; *Atchison, T. & S. F. R. Co. v. Alsdorf,* 56 Ill. App. 578; *Whitmore v. Boston & M. R. Co.,* 23 N. E. 220; *Nihill v. N. Y., N. H. & H. R. Co.,* 44 N. E. 1075.)

"Where there is a natural and safe method of performing his service, and the servant carelessly pursues a method

---

[1] Herndon v Salt Lake City, 34 Utah 65, 95 Pac. 646.

that is obviously more dangerous, he is guilty of contributory negligence, and cannot recover." (*Gowen v. Harley,* 56 Fed. 973; *Morris v. Duluth L. S. & A. R. Co.,* 108 Fed. 747; *English v. Chicago M. & St. P. R. Co.,* 24 Fed. 906; *Fritz v. Electric Light Co.,* 18 Utah 503; *Goldstein v. Railway Co.,* 46 Wis. 404; *Jackson v. Grilly,* 26 Pac. 331; *Cunningham v. C. M. & St. P. Ry. Co.,* 17 Fed. 882; *Dawson v. Railway Co.,* 114 Fed. 872; *Russell v. Tillotson,* 140 Mass. 201; *Bailey's Master's Liability,* 169; *Estees v. U. P. R. R. Co.,* 16 Pac. 131; *Colorado Coal & Iron Co. v. Carpita,* 40 Pac. 248; *Salem Bedford Stone Co. v. O'Brien,* 40 N. E. 430; *Walker v. Atlanta & W. P. R. Co.,* 30 S. E. 503; *Central R. Co. v. Moseley,* 38 S. E. 350.)

"A refusal to give an instruction based on and applicable to the facts in evidence which is not covered by other instructions is error." (*Last Chance Mining Co. v. Ames,* 47 Pac. 382; *St. Louis Ry. Co. v. Boyce,* 48 Pac. 949; *Marsh v. Cramer,* 27 Pac. 169; *Buckley v. Silverberg,* 45 Pac. 804.)

### RESPONDENT'S POINTS.

Where the servant has reasonable grounds for believing that if he is threatened with some transitory danger he will receive timely warning of its approach, he is entitled to rely thereon and to relax his own vigilance without being deemed guilty of contributory negligence. (1 Labatt, Master and Servant, sec. 355; *Pool v. Southern Pac.,* 20 Utah 210; *Berry v. Railroad,* 40 Iowa 564.)

STRAUP, J.

Joseph Condie, deceased, was in the employ of the defendant and appellant in the capacity of an engine wiper. It was alleged in the complaint that while he was under an engine in the defendant's roundhouse, and was engaged in cleaning and wiping the engine, the defendant, negligently and without warning, ran and operated another engine against, and killed him. In an action brought by his admin-

istrator, a verdict was rendered in favor of the plaintiff.
The defendant appeals. It urges (1) that the court erred
in refusing to direct a verdict in its favor on the ground of
insufficiency of evidence to show negligence on its part, and
on the further ground that the deceased was guilty of neg-
ligence; and (2) in refusing to instruct as further requested
by it.

We will only refer to so much of the evidence as bears
on the assignments of error. The engine about which the
deceased was at work stood on a track in the roundhouse.
It was placed there to be cleaned. There was a pit un-
derneath it about two and one-half or three feet deep. The
deceased and another employee were in the pit under the
engine, cleaning and wiping it. The defendant had no rule
with respect to the giving of warnings or signals when ap-
proaching or connecting an engine situate as this engine
was, nor with respect to protecting it by the placing of flags
or other signals upon it. It, however, was the usual prac-
tice to give warnings by ringing the bell or sounding the
whistle of the approaching engine or car, or by some one
calling, "Look out!" Several witnesses on behalf of plain-
tiff, and who were about the engine which stood over the
pit, testified that they heard no bell ring nor whistle blown
as the moving engine approached. Some of them testified
that some one called out, "Keep your heads down," and,
"Look out!" The employee working with the deceased, and
who was only a few feet from him, testified that he heard
no bell ring nor whistle blown, nor did he hear any one
call out before the engine which stood over the pit was struck
and moved. He did not know that it was likely to be mov-
ed, and he was surprised when the engine, all of a sudden,
was struck and moved back about five feet. The foreman
of the roundhouse, and who also was the foreman of the de-
ceased, operated the approaching engine. He testified that
he rang the bell as he approached, but that he heard no one
call out. Another witness on behalf of the defendant also
testified that the bell was rung. Others testified that some
one near the engine standing over the pit called out, "Look

out!'' and, "Duck your heads." Some of the witnesses testified that the outcries were in ordinary tones, in about such tones as the witnesses spoke in giving their testimony on the stand. Others said that the outcries were louder. Some of them testified that there was considerable noise about the place, others that it was pretty quiet, and that some talking was going on. The lowest parts of the engine, consisting of a breakbeam and rods extending the full width of the engine, were about three and one-half to four feet from the bottom of the pit. The deceased, when last seen alive, which was but a few minutes before the two engines came together, was standing upright underneath the engine between the breakbeam and the middle or main drive wheel, cleaning and wiping the eccentrics. Some of the witnesses testified that the engine was bumped into and suddenly driven back a distance of about five feet; others that it was driven back four or five feet slowly and carefully. After the engine was moved such a distance, it stopped but a few seconds, and then was again moved in the same direction about six inches, when, upon the giving of a signal, it was suddenly stopped. Immediately thereafter the deceased was found leaning or lying over one of the rails of the track underneath the engine, with his head and one arm resting between the middle and back drive wheels and extending over the rail. The rest of his body was in the pit. His head was bruised; neck broken. The sixth, seventh, eighth, ninth, and tenth ribs on the left side were badly crushed. The tissues on the left side were badly bruised and discolored, and the skin was scraped off a large area of the chest on the left side. The skin was not broken about the neck, but was discolored all the way around. The wheels of the engine were not resting on his head or neck or any part of his body. One of the witnesses gave it as his opinion that the wheel struck him on the back of the head or neck, but he did not see the wheel strike him, nor did he notice any marks about the head or neck. As another witness expressed it, it seemed to him that the

34 Utah—16

deceased was caught and squeezed between the two wheels which were about three feet apart, and that he was merely caught there tight enough so that he could not free himself. Another witness testified that, ''after the engine started to move back, I noticed Condie [the deceased] shove his head out between the main and back drivers'' of the engine. With respect to the alleged negligence of the defendant, we think the case was properly submitted to the jury. Whether warnings were given, and whether they were sufficient and timely under the circumstances, were questions upon which the evidence was conflicting. It is further urged that the deceased was guilty of contributory negligence. It was shown that the drive wheels of the engine were but three feet apart, and that there was a greater space between the wheels of the engine and the tender. From this it is argued that in leaving the pit two ways were open to the deceased, one by going between the wheels of the engine and tender which was reasonably safe, the other by going between the wheels of the engine, which was obviously dangerous; that the deceased was not injured at the first movement of the engine; and that, in attempting to leave the pit before it was moved the second time, he voluntarily tried to go out between the two drive wheels of the engine, and thus chose an obviously dangerous way when there was open to him a safer and better way by going out between the wheels of the engine and the tender. It is also claimed that instead of attempting to get out, had he remained in the pit and lowered himself, the engine would have passed over him without injury. Upon these premises the appellant seeks to apply the well-recognized principle of law that, where there is a natural and safe method of performing the service, the servant who voluntarily and in no emergency, but carelessly, pursues or selects a method known to him to be dangerous, or if the danger is apparent or obvious, is guilty of contributory negligence.

The principle invoked has here no application. Appellant's hypothesis is based upon the assumption that warnings were given deceased, and were not heeded by him, questions

upon which the evidence was conflicting; or that, when the engine under which the deceased was working was bumped into and suddenly moved a distance of five feet, the deceased was not injured, but that after the engine had moved such distance and remained standing but a few seconds, the deceased, without notifying the operatives of the engine, voluntarily attempted to crawl out between the main and back drive wheels of the engine, and while doing so the engine was again moved about six inches, the wheels of which struck his neck and killed him. This conclusion is reached from the position in which the deceased was found, with his head between the wheels and one arm extending over the rail, and from the testimony of the witness who testified that he noticed the deceased shove his head out between the main and back drivers. Upon an examination of the record, we are convinced that the conclusions drawn by the appellant are not the only conclusions that could properly be drawn from all the surrounding facts and circumstances. The depth and character of the pit, the distance the breakbeams and rods and other parts of the engine projected underneath the engine, the position the deceased was in, the particular work at, and the part of the engine about, which he was engaged but a few minutes before it was moved, and the character and extent of his injuries on different parts of his body were fully described to the jury. We think from all the facts and circumstances the jury were authorized in finding that at least some of the fatal injuries were inflicted when the engine was moved the first time. Standing as the deceased was, upright under the engine, and at the place where his companion testified he was when the engine was suddenly moved the first time without warning (as the jury, by their verdict, evidently found), a distance of about five feet, it is not improbable that some part of the engine struck him. We think the jury were authorized in so finding. It is just as plausible, as argued by the respondent, that the deceased was struck by the first movement of the engine and so thrown that his head and arm fell between the two drive wheels, as argued by appellant that the deceased escaped injury when.

the engine was moved the first time, and that he then voluntarily, under no excitation and in no emergency, attempted to crawl out between the two drive wheels, and was killed by the engine moving a distance of six inches. The wheel may have struck the deceased's head or neck with sufficient force to break his neck without abrading or lacerating the skin. If, however, he was not struck nor injured at the first movement of the engine, and only his head or neck was struck at the second movement, a distance of but six inches, and the engine then immediately stopped without any part of it resting on any portion of his person and without dragging his body, it may be somewhat difficult to account for the crushing of his ribs and the other wounds on his body. It would seem just as probable and natural to account for them on the theory that the breakbeam or rod struck him at the first movement of the engine and threw him against the rail and that he was again struck by the second movement, as on the theory advanced by appellant. At any rate, these were matters more properly for the consideration of the jury. Very true, one of the witnesses testified that he noticed the deceased "shove his head out between the main and back drivers," and it is contended that such testimony is not contradicted. It is not infrequent where a defendant charged with the commission of crime testified that he did not inflict the mortal wound, and where there was no direct testimony coming from the mouth of an eyewitness contradicting it, but where, nevertheless, the jury, from all the facts and circumstances shown in the case, were justified in disbelieving the testimony. A jury may not arbitrarily discredit a witness nor reject his testimony; but the witness may be discredited and his testimony disbelieved, if, from all the other facts and circumstances in the case, it fairly appears to the jury that the witness is mistaken, or that his testimony is improbable or untrue. In other words, the jury is not bound to believe a thing true because a witness testified to it, and because there is no direct testimony coming from the mouth of an eyewitness disputing it. Nor was the court, in passing on the

defendant's request to direct a verdict, bound to accept the statement of such witness as conclusive on the subject, when there were other facts and circumstances in the case from which the jury could properly find otherwise.

But, independent of these considerations, we think the principle invoked by appellant has no application—at least not to the extent that the court ought to have declared the deceased guilty of negligence as matter of law.     Assuming that the deceased was not injured by the first movement of the engine, and, further, that the engine was suddenly moved without warning, as the jury could properly find from the evidence, we are not prepared to say that as matter of law the deceased was guilty of negligence in attempting to escape a perilous situation in which he found himself, and which was occasioned by the defendant's negligence, because, in so doing, he attempted to get out at a place more dangerous than another, or because he did not exercise the best judgment under the circumstances.    The situation does not involve the principle that where the servant in the performance of his services has two ways open to him, one of which is natural and reasonably safe and the other obviously dangerous, and where he voluntarily selects the dangerous method.    It rather presents a condition where the servant attempted to escape a perilous situation which was created by the negligence of his master.    Furthermore, it cannot be said as matter of law that in leaving the pit the deceased had open to him two ways, one safe, the other dangerous, in the sense in which the principle invoked is generally applied.    The situation was rather where both ways were dangerous; one, of course, more so than the other.    But it can hardly be said that to crawl out between the wheels of the engine and the tender when in or about to be put in motion was reasonably safe.    About all that can be said of it is that such way, because of the greater space, did not involve as much danger as the other.    A person may, of course, be negligent under certain circumstances in choosing the one instead of the other.    We, however, think the

question here was one of fact, and therefore the defendant's request to direct a verdict was properly refused.

The defendant further requested the court to charge the jury as follows: "I charge you further as matter of law that it was the duty of the plaintiff's intestate to use ordinary care for his own safety, and choose the safest course in performing his work or in changing his position from one place to another whenever such safe course was open, plain, and obvious. Therefore, if you find from the evidence that at the time of the accident there was a reasonably safe way by which he might have come out from under the engine, if it was necessary for him to come out at that time, and that under these conditions he chose a way manifestly and obviously unsafe and by this means lost his life, the plaintiff cannot recover, and your verdict must be for the defendant, 'No cause of action.'" The court refused the request, and gave the following:

"(14) It is the duty of one who enters the employ of another to use reasonable and ordinary care to avoid injury to himself, and in every case the care which he is bound to exercise is in proportion to the dangers which obviously surround; and, if you believe from the preponderance of the evidence that the deceased failed to use such ordinary care, and such failure proximately contributed to the happening of an injury to him, the defendant is not liable in damages resulting therefrom.

"(15) If you find from the evidence that plaintiff's intestate just before the accident which resulted in his death was working in the pit under the defendant's engine, and that the place was reasonably safe in which to perform his work, and if you further find that the engine moved a distance of four or five feet and stopped, and after this move of the engine, and before the second move, he, without warning or notice to those operating the engine, crawled out upon one of the rails of the track between two of the drivers of the engine, and that said place was obviously dangerous under the circumstances, and that in this position he lost his life by being run over by the engine, I charge you as a matter

of law the plaintiff cannot recover, and your verdict must be for the defendant, 'No cause of action.'

"(16) If you find from the evidence that just before the accident the plaintiff's intestate was in a comparatively safe place, and that there was no emergency existing requiring him to leave said place, and if you find that an ordinarily prudent man in his position would have had reason to believe that the engine might move upon the track in one direction or the other, and under these conditions he tried to crawl out between the drivers of the engine, and in doing so placed his body across one of the rails of the track, and thus lost his life because of a movement of the engine, the plaintiff cannot recover, and your verdict must be for the defendant, 'No cause of action.' "

No complaint is made of the charge as given. Complaint is made because the request was refused. We think the ruling not erroneous for several reasons. Before the appellant is in a position to impute error to the trial court in refusing its request, it must be made to appear that the request was good not as a part but as a whole. The first sentence of the request is too broad. It is not the law that a servant is in duty bound "to choose the safest course in performing his work." That is to say, there may be two natural and usual ways of performing the work, each of which is reasonably safe, and neither dangerous, yet one may be safer than the other. In such case it cannot be said as matter of law that the servant is guilty of negligence because he did not choose the safer one. The first sentence of the request stated abstractly is in direct conflict with the second, wherein the principle is sought to be correctly applied that, where there is a natural and reasonably safe method of performing the work, the servant who voluntarily or carelessly pursues a method which is obviously dangerous or known to him to be so is guilty of contributory negligence. The request was, therefore, properly refused, though other portions of it may not be objectionable. The last sentence of the request more nearly stated the law, and might properly have been given had not the conduct of the

deceased with respect to an emergency, or an unexpected and sudden peril, been involved. This portion of the request was, however, also properly refused because it singled out an isolated fact by excluding all others bearing upon the question, and, without asking a rule of law with respect to it, asked a directed verdict in favor of the defendant. Had this request been given, the jury would have been directed to render a verdict for the defendant if they found that the deceased did not choose the safest way in going out from under the engine, regardless of the elements of sudden peril or of an emergency. Counsel for appellant say that they were entitled to have the law given to the jury which was applicable to their theory of the case. That is true. But they were not entitled to have a verdict directed in favor of the defendant upon a single fact, if found in its favor, unless such fact was decisive of the whole case. The observations made by Mr. Justice Frick in the case of *Herndon v. Salt Lake City,* 34 Utah 65, 95 Pac. 646, concerning such matter, are also here very pertinent. To successfully defend the request, the appellant is obliged to accept one of the following propositions: First, that it is the law, where a servant is placed in a perilous situation, created by the negligence of his master, and is confronted with an emergency, and attempts to escape, he, at his peril, is bound to choose the safest course or method of escape; or, second, that the elements of an emergency and the excitation of the deceased were not involved in the case. The first position is not tenable because it is against law; the second, because it is against the record, for there is evidence from which the jury were authorized in finding the existence of the elements referred to. And, lastly, the principle of law upon the theory contended for by appellant was sufficiently stated to the jury in paragraphs 15 and 16 of the court's charge. The court concretely applied to the facts of the case the principle of law which the appellant attempted to state abstractly in its request.

We think the case was properly and fairly submitted to the jury, and the rights of the appellant fully protected in the charge. The judgment is therefore affirmed, with costs.

McCARTY, C. J., and FRICK, J., concur.